Holsenbake *vs.* The State of Georgia.

---

JOHN R. HOLSENBAKE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

| | |
|---|---|
| 45 | 43 |
| 88 | 53 |
| 45 | 43 |
| 90 | 469 |
| 45 | 43 |
| 105 | 189 |
| 45 | 43 |
| 123 | 438 |

BY TWO JUDGES.—1. Where, on a trial for murder, it was proposed to prove certain statements of the prisoner confessing his guilt, made in jail to a fellow prisoner, and, on a preliminary examination, it appeared that the prisoner had, before these statements were made, written a letter to the Governor, indicating that the murder had been committed in pursuance of a conspiracy, and mentioning several names of persons as conspirators, and the Attorney General of the State, by authority of the Governor, had offered him a full pardon if he would disclose the whole, but it did not appear that he had made any disclosure, either to the Attorney General or Governor, but had promised to do so in writing, which written disclosure he had not made at the time he made the statements to his fellow prisoner :

*Held,* That it was not error in the court to permit the statement thus

made to go to the jury, it not appearing that they were made under any undue influence at the time, and there being nothing to show that the arrangement with the Attorney General had been acted on by the prisoner.

2. The preliminary examination before the Court, to ascertain if confessions offered are, or are not voluntary, is properly conducted in the presence of the jury, and the confessions, when introduced, are to be passed upon by the jury, in all respects; the decision of the Judge that they were voluntarily made being only *prima facie.*

3. It is competent for the State to introduce evidence to contradict any facts stated by the prisoner in his statement made before the jury, under the Act of 1869.

4. A charge of the Court, that the jury must be *satisfied* that the defendant was insane before they can acquit him upon that ground, though, perhaps, too strongly stated, is not a ground for a new trial if there be no evidence of insanity before the jury.

5. When, on a trial for murder, the confessions of the prisoner were in evidence before the jury, and the Judge, in his charge, told the jury that whilst they could not convict upon the confessions alone, uncorroborated by other evidence, yet, that, if it was proven that the person to whom the confession referred, was unlawfully killed, this was evidence of corroboration sufficient to authorize the jury, under the law, to convict on the confessions:

*Held,* That this was not error.

6. If the verdict is amply sustained by the evidence, and no material error appears in the rulings of the court below, a new trial will not be granted. (R.)    28th February, 1872.

Criminal law.   Before Judge CLARK.   Macon Superior Court.   May, 1871.

Holsenbake was indicted for murdering George W. Fish, in said county, on the 28th of February, 1871, by shooting him.   He was tried in May, 1871.

Jacob Odom, a negro, testified that he was at the train about 2 o'clock, A. M., of said day, when Fish came on it to his home, Oglethorpe; that he took Fish's papers to carry for him, and, as they were walking near the Courthouse door, some one shot a gun from it, and Fish fell.   He added that he ran off for help, told several persons that Fish was killed, and begged them to go to see him.   They

Holsenbake *vs.* The State of Georgia.

went, and found him dying from the effects of bullets in his head and neck.

What Odom said and did, as aforesaid after the shooting, was objected to by prisoner's counsel, but the objection was overruled. The parties whom Odom called up testified that Fish died in a few minutes from the effects of said wounds.

One McNeil testified that, in January, 1871, he was talking with Holsenbake, and that Holsenbake said that, if Fish was having improper intimacy with his (Holsenbake's) former wife, it would do Fish no good. Further he testified as follows: On the 10th of April, 1871, at night, he and the deputy sheriff happened to be near the jail together. Holsenbake and Loyd (who was indicted with him as accessory,) were in the jail up-stairs, in different rooms, and one Stubbs was in jail below Holsenbake. He heard Stubbs ask Holsenbake if Loyd were not the instigator of that matter, and Holsenbake said Loyd was, and charged Stubbs to tell no one of it. He did not suppose Holsenbake was aware that he (O'Neil) was there. Though he remained there about an hour, he did not remember any more of said conversation.

It was agreed that defendant's counsel might move to rule out this evidence, after they had examined the facts and circumstances under which Holsenbake so spoke to Stubbs.

Another witness testified that, two or three weeks before Fish's death, prisoner took a drink at a well; said it would be the last he would ever take there, and that something would soon happen which would not be agreeable news to the Jones family. (Jones was the father of Mrs. Holsenbake, and she and her child resided with Jones.) Another negro testified that Holsenbake several times consulted him as a fortune-teller; and, about two weeks before the killing, asked him if Fish was in the way of his reconciliation with his wife, and whether he (Holsenbake) would ever kill anybody. Stubbs was examined, and testified to a general conversation between himself and Holsenbake, in the eve-

ning before Loyd was put in jail, in which Holsenbake told
him that he (Stubbs) was in no danger, for he knew nothing
about the killing, but that he (Holsenbake) was in danger
of being hung, for parties would swear lies *against* him;
that he staid all night that night at Loyd's, but did not
know whether Loyd and his wife knew it or not; that he
was looking for Colonel Farrow to come down, and wished
Stubbs, if Farrow asked him who killed Fish, to say he did
not know; that he (Holsenbake) would bring some things
to light before Court which would relieve Stubbs, but could
not yet.  This appearing to be substantially all that oc-
curred between Stubbs and Holsenbake prior to said conver-
sation heard by McNeil, McNeil's testimony was held com-
petent over the objections of defendant's counsel.  Prisoner's
counsel reserved the right to move to rule out Stubb's testi-
mony, when it should appear why Holsenbake so addressed
him.

Colonel Farrow, Attorney General, was introduced.  He
produced a letter from Holsenbake, not dated, addressed to
the civil authorities of Georgia, and turned over to Farrow
by the Governor, on the 25th of April, 1872, with instruc-
tions to proceed to Oglethorpe, and try to find out whether
there was a conspiracy to kill Fish, and who was concerned
in it.  This letter was introduced as evidence over prisoner's
objection.  It stated nothing to the purpose, but that prior
to Fish's death, Jones, son of Jones, who had been elected to
the State Senate as a radical, was discussing the probability
of his father being unseated, and said, if he were, Bullock
would appoint him District Judge; that when Holsenbake
suggested that Fish would likely be appointed, he replied
that his father could hire a negro to kill Fish, and it would
be charged to some democratic Ku-klux, and his father
would get the place at last.  (Fish had been appointed Dis-
trict Judge before he was killed.)

Farrow testified that, with this letter, he saw Holsenbake
and asked him to explain it, and told him, in presence of

Holsenbake *vs.* The State of Georgia.

Mr. Wallace, his attorney, that he (Farrow) would not give a cent for any confession of his own guilt, but, if he would disclose who else was engaged in it, he would recommend the Governor to pardon him, and he believed the Governor would regard his recommendation favorably.    The record does not show when this was, nor that it was prior to the statement made to Stubbs.    Farrow also said that it was arranged, on the day he spoke with H., in Wallace's presence, that Holsenbake should make a written statement.    Holsenbake made a written statement, at Farrow's request, but what that was does not appear.    Mr. Wallace testified to the remarks of Farrow to Holsenbake about as Farrow did.    And Wallace offered to read a letter from Holensbake, written to him on the 20th of April, 1871, and his reply of the 26th, in which reply he stated that he had no doubt Farrow would keep his promise, and urged him, meanwhile, to get ready for trial, especially to get ready to prove that he anticipated living with his wife again, and that Fish's designs upon his wife were bad.    This evidence was all offered to show that the confessions were made under the influence of hope of relief.    The Court rejected Holsenbake's letter to Wallace, and Wallace's reply.

Stubbs was again introduced by the State over prisoner's objection.    He then testified that since the conversation formerly detailed, Holsenbake told him that he, Holsenbake, killed Fish because of his, Holsenbake's wife, and that Loyd instigated him to do it.    He admitted that detectives sent from Atlanta had promised him, Stubbs, a pardon if he would tell all he knew about the matter.    Another witness testified to hearing this last conversation.

Here the State rested its case.    Prisoner's counsel said they would introduce no evidence, but would read prisoner's statement.    The Solicitor General asked if the reading of that statement would deprive defendant's counsel of the concluding argument.    The Court said it would not, but that the State might rebut the statement by evidence.    Prisoner's

counsel then read a written statement by prisoner. In it he said nothing about killing Fish. He stated in it that during his long absence of four or five years from his wife, she frequently wrote him to return and live with her; that, after his return, he watched Fish going to her room, (as he supposed,) giving this in detail; stated that this made him almost a maniac, and under this influence he might have made improper threats against Fish; that any confessions made were in hope of Executive pardon.

The State introduced a record showing that Holsenbake's wife had been divorced from him, but when the divorce was granted does not appear. Several witnesses testified to Mrs. Holsenbake's chaste and ladylike conduct. While one of them was being examined, defendant's counsel, on cross-examination, asked him what was Fish's character for libertinism. This was objected to. The Court said the question might be asked, but if prisoner cross-examined the witness they would lose the conclusion of the argument. Upon reconsideration the Court said he would not allow the question answered, but would withhold any decision as to the effect of cross-examination of the State's witness upon the right to open and conclude the argument until the point arose. The prisoner's counsel did not cross-examine the witness. Mrs. Holsenbake testified that Fish never had been in her company except in the presence of other persons. Here the evidence was closed. Defendant's counsel opened and concluded the argument.

The Court charged the jury as follows, reading the sections of the Code cited therein defining murder, etc:

GENTLEMEN: You are called to the discharge of a most solemn duty; one that no good citizen should seek, but one that all good citizens who have at heart the well-being of society, and the faithful maintenance of the law, should discharge with faithfulness and fidelity, so as to vindicate the law, acquit their consciences, and measure out justice to those accused of crime.

Holsenbake *vs.* The State of Georgia.

The defendant is charged, before the bar of the county, with the high crime of murder. If he is guilty of the charge, he has forfeited his life. The law makes that the penalty of the transgression; it lays its powerful and strong hand upon him, and calls upon him in a most solemn form to answer the charge; it gives him every advantage of counsel, and the privilege of selecting the men as jurors who shall pass upon his guilt or innocence.

This grave responsibility is cast upon you, and you alone can discharge it. If he is guilty, you will, without regard to consequences, go forward and meet the result like honest men. If he is innocent, you will, with equal firmness, throw the protection of the law around him by a verdict of not guilty.

The wisdom of the world has demonstrated that society cannot protect itsself against the crime of murder, otherwise than by taking the life of the offender. No other punishment seems adequate to the enormity of the crime, and it is only in those countries where this penalty is promptly inflicted upon the guilty, that human life is protected. It is the certainty of the punishment that deters offenders. That mistaken or misapplied clemency which shields the offender and protects the guilty—which shrinks back from the consequence of verdicts of guilty—inflicts a fatal blow at the best interest of society, gives license to crime, and leaves the peaceable and unprotected citizen at the mercy of every desperado who may seek his life.

Still, in the maintenance of the law and the protection of the community, the vindication of the innocent is a duty as sacred and binding as the punishment of the guilty. While you should set your face against crime, and sternly and unflinchingly bring the criminal to justice, you should stretch forth your hand to save the innocent from harm.

The great questions for your deliberate consideration are these:

1. Did the deceased, George W. Fish, come to his death in the manner set forth in the bill of indictment?

2. Was the crime committed in this county?

3. Did the defendant, Holsenbake, commit the crime?

*Murder, Code,* sections 4254, 4255, 4256. Malice is the main ingredient of murder. In every killing the law presumes malice, and if the accused is identified as the slayer, it is incumbent on him to show there was no malice: 3739.

*Code,* section ... Confessions of guilt should be received with great caution. But when the proper caution has been observed in the reception of the testimony, if it appears that the confessions were deliberately made, that they were made freely and voluntary, without being induced by another, by the slightest hope of benefit, or remotest fear of injury, they are the most effectual proofs in the law; their value depends on the supposition that they are deliberate and voluntary, and on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience. A confession alone, uncorroborated by other evidence, will not justify a conviction : section 3739.

The question for your consideration is, what " other evidence" is corroborative?

The corroboration contemplated by law, in this case, is that of the death of Fish, and that he came to his death by gunshot wounds. This is what is called in law the "*corpus delicti.*" These facts must be made out before you can convict upon the confessions of defendant, however deliberately made. The reason of this wise rule is, that persons have been convicted and executed upon their confessions, and afterwards the supposed dead man was found alive.

You must be fully satisfied that Colonel Fish was *killed,* that he was killed unlawfully, while in the peace of State, before you can convict upon the confessions alone of the defendant; but if you are satisfied of these facts, no other corroboration is necessary. That is the only other evidence

Holsenbake *vs.* The State of Georgia.

needed, in order to justify you in finding a verdict of guilty upon the confessions, provided you are satisfied that the defendant has confessed that he committed the crime.

If Mr. and Mrs. Holsenbake were divorced from each other by a decree of the Superior Court of Macon county, the relations of man and wife ceased from the date of the decree, and they were, from that time, no longer responsible for the conduct of each other. Holsenbake ceased, from that time, to have any control over the action or conduct of Mrs. Holsenbake. He was not responsible for her support or maintenance, nor was he responsible, either legally or morally, for any act of hers. It was no concern of his, more than any other man in the county, whether or not she went astray from the path of rectitude. If she had been polluted with shame and disgrace, it is her misfortune; but his hand could not shield her, nor could his arm inflict punishment on the suspected man. He had no right to take the life of Colonel Fish—if he did take it—on account of suspicion, in his mind, of too great intimacy with Mrs. Holsenbake. He had no right to take his life if he had caught him in the act of adultery; and if he had taken his life under such circumstances, it would have been murder. If he could not take life for actual adultery, much less could he take life—if he did take it—upon a suspicion of guilt.

The marriage bed is sacred, and when it has been invaded, society may wink at a swift and terrible retribution upon the offenders, but the martial rights can only attach when the state of marriage exists, and in no case when the parties have been divorced. Society, in its regard for the sacredness of the marriage relations, can go no further than this without breaking down all barriers, and putting itself and the lives of its citizens at the mercy of every jealous-minded and evil-disposed man.

INSANITY.   The killing must have been done by a person of sound memory and discretion. A lunatic or idiot, or one who is inflicted with insanity, is not responsible for his acts.

He is capable of doing a deed, but is incapable of committing crime—except the offense is committed in a lucid interval—the man who so takes life is not responsible to the law.

The law presumes every man to be of sound mind, and responsible for his acts, and that presumption continues until the contrary is shown. If the defendant relies upon insanity to excuse or justify the killing of deceased, he must prove it; it is not a matter of speculation or conjecture, but a matter of proof, like any other fact; and, if the defendant makes the issue, he must prove it to your satisfaction, or you will be bound to discredit it.

If Holsenbake committed the crime charged against him, and if at the time of its committal he had capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act in question; if he had knowledge and consciousnes that the act was wrong, and would deserve punishment, he is responsible for the deed. Upon this question it is for you to look into the testimony, and if the deed was committed in secret, at the dark hour of night, from a place of concealment, with any arrangement and purpose to avoid detection, to say how far an insane mind would have thus deliberated and planned the death of another.

STATEMENT OF PRISONER. The prisoner is allowed, under the law, to make his statements to the jury, not under oath, and you can attach such importance to them as you think proper. You can receive them as true in the whole or in part, or you can reject them from your consideration entirely. You should construe any statement thus deliberately made, which may imply guilt, if such exist, most strongly against the defendant.

DOUBTS. If, after a full and impartial consideration of all the facts in the case, there is a reasonable doubt in your mind as to the guilt of defendant, you will render a verdict of not guilty. Such doubts must not be mere speculations or idle conjectures, but well-founded doubts, growing out of the evidence alone—such doubts as prevent your mind from reach-

ing a safe and satisfactory conclusion. But if, upon a full consideration of the facts, you do, as reasonable men, conclude that the crime was committed, and that defendant committed the crime, you can safely go forward, and you should do so, and find a verdict of guilty. But if, after due deliberation, you cannot come at a satisfactory conclusion, but the mind is still in doubt as to the guilt of defendant, you will find him not guilty.

The jury found Holsenbake guilty. Defendant's counsel moved for a new trial, upon the following grounds: The Court erred —

1. In admitting the testimony of the witness, Jacob Odom.

2. In admitting the evidence of McNeil as to confessions.

3. In admitting the evidence of Stubbs as to confessions, and in excluding the letter of Wallace.

4. In admitting, in evidence, the letter of prisoner to Governor Bullock.

5. In allowing the State to reopen the case, and introduce new evidence in rebuttal of prisoner's statement.

6. In admitting evidence to the jury of the good character of Mrs. Holsenbake, in rebuttal of said statement.

7. In its original ruling as to the effect of the cross-examination of the State's witnesses, in depriving prisoner's counsel of the concluding argument to the jury, and in the subsequent withdrawal of that decision, and refusal to say whether the Court would reaffirm said decision or not.

8. In refusing to permit prisoner to prove the character of Fish for lechery and libertinism, as above explained and set forth, after allowing the State to show Mrs. Holsenbake's good character.

9. In the charge to the jury—above set forth—the same being, in whole and in part, contrary to law.

10. Because the verdict is strongly and decidedly against the weight of the evidence, unsupported by evidence, etc.

The Court refused a new trial, and error is assigned on said grounds.

C. T. GOODE; W. S. WALLACE; JACK BROWN; W. H. REESE, for plaintiff in error.

W. A. HAWKINS, Solicitor General, *pro tem.;* PHIL. COOK, for the State, cited 21 Ga. R., 227; 28th, 92, 576; Roscoe's Crim. Ev., 55; 2 Bailey's R., 569; 4 C. & P., 221; 14 Ga. R., 43; Brasell *vs.* State, and Banks *vs.* State, May, 1871.

McCAY, Judge.

1. It is very possible that the truth of this case does not appear in the record, and that it was not brought out on the trial. As the case is presented to us, we are unable to find any fault with the Judge for admitting the statements of the prisoner. It does not appear that he made any confession to Mr. Farrow. All that appears is that he promised to do so. It would be pushing the caution and charity of the law very far to refuse the statements made at the jail, under this state of the case. We recognize the rule, that, if a confession be drawn out by improper influences, statements respecting it, though made to persons in no way connected with the first statement, will not be received, until it be shown that the accused was entirely free from the improper influences. We are not prepared to say that a confession, made to Mr. Farrow, would have or would have not been admissible. We have no means of knowing whether Mr. Farrow's promises acted on his mind; simply because, so far as the record shows, he made no confession to him. Nor is there anything in the proof going to show that what came out at the jail was in the least influenced by Mr. Farrow's promises. Indeed, what occurred at the jail seems, affirmatively, to have come out in violation of his pledge to Mr. Farrow, since that confession was to be in writing.

2. We see no error in the action of the Court in making the preliminary examination before the jury. The truth is,

Holsenbake *vs*. The State of Georgia.

it is only before the jury it can be made. It would be a wrong to the prisoner to make it in any other way. The decision of the Judge that confessions are admissible is only *prima facie*, by the Judge. If he admits them, it is still his duty to instruct the jury that, if they were not freely made they should reject them as evidence; and, in any event, the jury will consider the circumstances under which they were made, in determining their weight. It is no reply to this to say that, by this course, the jury will ordinarily hear the confessions, and that they will necessarily affect their minds. This is quite an uncomplimentary argument, as respects the jury, and we do not consider it of much weight. It would be impossible to conduct a jury trial on this principle. In most cases it is impossible for the Judge to determine the admissibility of evidence until he knows what the evidence is. Experience has proven that juries will not give any weight to evidence which the Judge tells them is not before them. At any rate, this, if it be an evil, is an evil inevitable, in jury trials.

3. The Statute Code, section ......, makes the statement of the prisoner evidence for what it is worth. We see no reason why statements thus made should not be contradicted as well as other statements he may make. It is always good evidence to show that a prisoner has made untrue or contradictory statements concerning the matter of which he is accused.

4. *Prima facie*, all persons are to be considered sane, and this is true in criminal as well as civil trials. If this be the legal presumption, it would seem to follow that unless the jury are satisfied of insanity, they must consider the prisoner sane. Perhaps the word *satisfied* is rather strong, and were there any evidence here of insanity, we might hesitate to sustain the Judge. But there seems to have been no such evidence. The rambling statement of the prisoner is, it is true, very incoherent, but it would be rather dangerous to give much weight to an evidence of insanity so liable to imposition as this. The wickedness of the crime and the want of

apparent motive, would be equally dangerous.    Motives are generally hard to discover, and wickedness is unfortunately incident to human nature, even in sane people.    We are free to say that we are not disposed to look kindly on pleas of insanity that have their strongest evidence in the enormity of the crime, and that are not thought of until it becomes important to excuse a violator of the law.    So far as appears from the record in this case, there was no other evidence of insanity but the enormity of the crime and the incoherence of the prisoner's statement to the jury, and, even if we were satisfied that the charge of the Judge, to the effect that they must be satisfied of the insanity of the prisoner before they could find him not guilty, on that ground, we would not grant a new trial, simply because there was here no evidence of insanity.

5. Our Code provides that "a confession alone, uncorroborated by other evidence, will not justify a conviction." It is contended that, by this clause of the Code, it is necessary there shall be corroboration of the confession in that part of it which acknowledges that the prisoner committed the crime.    To make out any case of guilt, there are two essential ingredients: First, a crime, must be committed, and the person charged must be the party who committed it. One of these elements is just as essential as the other.    If one confesses that he has committed a crime, that is not sufficient to convict.    But if it be proven that just such a crime as he acknowledges was, in fact, committed, does not this corroborate his confession?    The Code does not fix the amount of corroboration.    It does not say that it shall be corroborated in a number of particulars, but simply that a confession alone, uncorroborated by other evidence, shall not be sufficient.    To require a confession to be corroborated in *every* particular, would be to say that a confession is not sufficient, unless there be other evidence, sufficient without the confession, which would be absurd.    We do not feel authorized to draw any line.    The confession must be corroborated,

but how far, and in what particulars, is not said. That there has been an *unlawful* killing, is, in a case of a charge of murder, one particular, and an important one. Each case must stand on its own footing, the jury being the judges. And if they convict on a confession which is corroborated by only one circumstance, the rule is complied with; the strength of that circumstance is to be judged of by the jury, according to the case. In the case before us, the confession is, in fact, corroborated in several particulars. The prisoner admits enmity to the deceased; the killing was with the weapons mentioned; it was an assassination, as mentioned, etc.

6. We think the verdict in this case amply sustained by the evidence; and believing, as we do, that there was no material error in the rulings of the Court, we affirm the judgment.

