POWELL *v.* THE STATE.

RUSSELL, C. J. 1. "It is very possible that the truth of this case does not appear in the record, and that it was not brought out on the trial" (*Holsenbake* v. *State*, 45 *Ga.* 43); but the evidence adduced was sufficient to authorize the verdict, and this court has no power to invade the province of the jury in passing upon the credibility of testimony.

2. There was no error, for any of the reasons assigned, in any of the grounds of the amendment to the motion for a new trial which required the grant of a new trial; and the verdict being approved by the trial judge, his discretion in refusing a new trial will not be disturbed.    *Judgment affirmed. All the Justices concur.*

No. 3678.    OCTOBER 12, 1923.

Murder. Before Judge Worrill. Early superior court. February 24, 1923.

William Powell was charged with the murder of Omar Howell. Upon the trial of the case he was convicted, and his punishment fixed at imprisonment for life. The defendant moved for a new trial, which motion was overruled, and to this judgment exception was taken. Upon the trial in the lower court the defendant offered no testimony and made no statement. It appeared from the testimony of the State's witnesses that on the night that Howell was fatally shot he and one Bridges left Blakely in Howell's car, going to Hilton, Georgia, the purpose of the ride being to get a young lady who was boarding at Hilton to go either to a party or picture show with them. Both Howell and Bridges had been drinking during the afternoon of the day before the ride, and had whisky in the car. Howell had his pistol. Howell did not go with witness to Hilton, but got out of the car about a mile from Hilton and about 150 yards from the house of the defendant, to await Bridges' return. The young lady and Bridges started back towards Blakely immediately; and when they got to the house just mentioned, Powell called to Bridges and said, "Here is Mr. Howell in here." Bridges stopped the car and waited a few minutes for Howell to come out, and then went in. Just as Bridges entered the room William Powell came out of the door and went down the hall carrying a pitcher or bowl, and went on down the hallway towards the rear of the house. Upon entering the room Bridges found Howell alone, propped up in the bed, with his loaded pistol within his reach on the bed beside him. Bridges asked Howell to come on and go home; to which Howell replied that he was shot. Bridges then went to the car and backed it up to the gate in order to get Howell in it, and returned to get Howell. When he returned William Powell was in the room. Bridges asked Howell who shot him. Howell replied that the defendant had. Defendant then sprang out of the window, and Bridges shot at him. Bridges and the young lady put Howell in the car and carried him to Blakely. That night·Howell was taken to a hospital at Dothan, Alabama, where he died early in the morning of the second day after the night of the shooting. A crowd assembled and hunted for Powell, but he was not apprehended for some months. When found and arrested he was working in Mechanics-

ville, New York, at a railroad shop, where he had come to get his pay. Powell was brought from this place to Newark, New Jersey, a distance of some two hundred miles, where he made an alleged confession; and was brought from there to Blakely.

A State's witness testified that he was one of the party that took Howell to the hospital, and that Howell made a dying declaration to him during the trip. As related by this witness, the declaration made by Howell was, in substance, that Howell was seated at the corner of Powell's yard, and Powell came walking towards him from the house, down the road; that Howell thought he was another negro, and called to him for a match; that thereupon Powell started back towards his house, Howell following him for the purpose of getting a match and asking about the other negro; that defendant went into the house, and, as Howell was upon the front porch, cracked the door and shot him, that Howell fell, and tried to draw his pistol; that defendant came out of the house, took his pistol from him, struck a match and held it so that he could see his face for the purpose of finding out who he was, then took him into the house and put him on the bed, lit a lamp, put his gun on the bed beside him, and then went out and stopped the car which Bridges was in; that Bridges came in the house and said, "Come on old boy," and then, after finding that he was shot, asked him who shot him, and when he answered, "Will Powell," the negro jumped out of the window and ran, and Bridges shot at him. The testimony as to the confession is very similar to that contained in the declaration, with the exception that in the alleged confession it is recited that Howell drew his pistol on the defendant, told him to hold up his hands, and upon his running to his (defendant's) house, Howell ran after him, and as defendant got in the house Howell came up on the steps and called to him, and that he then "cracked" the door and shot him. That Mr. Howell asked him to stop the car and "tell Bridges to come there."

In his motion for a new trial the defendant assigned error upon the general grounds, and alleged error in a portion of the charge of the court, as follows: "By mitigating circumstances are meant some such circumstances which, while not enough to afford justification, but yet are sufficient to show some provocation for the act, and alleviate the killing on the idea of malice, and thereby reduce such killing to a lower grade of homicide than that of murder,"

"for the reasons that such charge was inapplicable to the evidence, in that there was no evidence tending to show that the defendant was guilty of a lower grade of homicide than murder (or justifiable homicide), and that said charge was misleading and likely to confuse the jury." Other grounds of the motion assign error upon the admission of the testimony as to the alleged confession. The substance of this testimony is, that two deputy sheriffs of Early County (one of them a brother of the deceased) were with the detectives when the defendant was arrested in New York and carried to Newark, New Jersey; and that upon their arrival in Newark the defendant was asked, in the presence of the chief of detectives of that city, two detectives, and the two deputies, if he killed the deceased. He denied the crime. The chief of detectives then took defendant into another room out of the hearing of the State's witnesses, and, after about thirty or forty minutes, called the witnesses into the room and told the defendant to tell them what "he had told him." The defendant then made the confession as outlined above. The witnesses could not tell what was said to defendant while he was in the room with the chief of detectives, but the confession was freely and voluntarily made to them. This testimony was objected to for the following reasons: "That such alleged confession had not been shown to have been voluntarily made; that there was no evidence that no inducement was held out to the defendant . . in the way of promises or hope of reward to get the defendant to make such statement."

Another ground of the motion complains of the admission of the testimony of one of the State's witnesses as to the alleged dying declaration. The objection urged to this testimony is that "sufficient evidence had not been introduced to make such a statement a dying declaration, allowable in evidence as such, even prima facie; that it had not been proved that Omar Howell was in articulo mortis at the time of such declaration." The evidence as to the condition of Howell at the time he made the dying declaration, as testified by the witness Johnson, is as follows: "And he was lying there and said, 'Johnson, I am going to die,' and I told him that the doctor said he had a good chance to live, and he ought to fight for it; and he said that he was going to fight like a man, but that he was much worse than we thought he was, and that he was going to die. I asked him how he knew that, and he said that the

shot in his stomach was going to kill him. I then told him that if he felt like he was going to die, that I wanted him to tell me how it all happened. He said that ever since he had been shot he could feel the water going through his system, and that he did not believe that he could live in that condition. At the time Omar made the statement to me that he was going to die, I don't know whether he had given up all hope of life or not; but he said he was going to die." The witness then related the alleged dying declaration as set forth above.

*W. G. Park* and *Lowrey Stone,* for plaintiff in error.

*George M. Napier, attorney-general, B. T. Castellow, solicitor-general, Seward M. Smith, assistant attorney-general,* and *Reuben R. Arnold,* contra.