## McDuffie *v.* The State.

1. Where, in a criminal trial, the judge fully and fairly charged the jury concerning the law of reasonable doubt, he was not bound to give a request instructing them, in effect, that if they have a reasonable doubt as to the existence of some particular and specially-enumerated fact, or what should be the proper inference therefrom, it would be their duty to give the accused the benefit of such doubt.

2. Under the facts presented by affidavits concerning the competency of one of the jurors, it was not error to refuse to set aside the verdict on the ground that such juror was not fair and impartial.

3. The fact that a juror's granduncle married the grandmother of the prosecutor, establishes no relationship either by blood or marriage between the juror and the prosecutor, it appearing that the latter was not a descendant of that marriage.

4. It was not error to charge that threats made by the deceased against the accused, although communicated to the latter before the homicide, would not justify the killing unless, at the time of the killing, there was some effort on the part of the deceased to kill the accused or inflict upon him an injury amounting to a felony, it appearing that the court also instructed the jury that they might take such threats into consideration in determining whether or not the circumstances were sufficient to excite the fears of a reasonable man, and the charge being otherwise full and correct on the subject of reasonable fears.

5. If a person, on being assaulted· by the brother of another, instantly withdraws and arms himself, and, before sufficient cooling time has elapsed, returns, and a combat ensues between himself and the other, the latter being the first to produce actual contact, and the former, without deliberation, but acting under the sudden impulse of overmastering passion, kills the other, he would be guilty of voluntary manslaughter.

6. The evidence fully warranted the verdict for voluntary manslaughter, and a new trial was properly refused.

February 20, 1893. By two Justices.

Criminal law. Charge of court. Juror. Threat. Manslaughter. Before Judge ATKINSON. Clinch superior court. March term, 1891.

B. A. WHITTINGTON and W. M. HAMMOND, by HARRISON & PEEPLES, for plaintiff in error.

W. G. BRANTLEY, solicitor-general, by brief, contra.

LUMPKIN, Justice.

1. The accused being on trial for murder, and relying upon the defence that he shot the deceased under the fears of a reasonable man that the deceased and his brother were about to kill him or do him some serious bodily injury, his counsel requested the court to charge as follows: "If, after considering all the evidence in the case, you have reasonable doubt as to the existence of such purpose on the part of the deceased and his brother, or on the part of either of them, then and there to kill McDuffie, or to do him some serious bodily injury; or if you have a reasonable doubt as to whether McDuffie then and there believed in the existence of such purpose on the part of his assailant or assailants, and that he had reasonable ground for such belief, it will be your duty to give him the benefit of such doubt." Error is assigned upon the refusal of the court to give this request in charge to the jury. Counsel for the plaintiff in error relied upon the ruling in *Mitchell* v. *State*, 71 *Ga.* 128. In that case the court was requested to charge, in effect, that if the jury had a reasonable doubt as to whether the circumstances under which the

accused acted were such as were calculated to excite the
fears of a reasonable man, or whether he felt at the
time he shot, and had reason to feel from the circum-
stances, that it was necessary to shoot to save his own
life, he would be justifiable. This court held that this
request, being pertinent, should have been given, it ap-
pearing that the trial judge entirely failed in his charge
to instruct the jury as to what should be their finding
if they were not fully satisfied that the circumstances
proved were such as to excite the fears of a reasonable
man.

In the present case the charge requested was, sub-
stantially, that if the jury were unable to determine
beyond a reasonable doubt, from the actions of the de-
ceased and his brother at the time of the killing, whether
it was the purpose and intention of either to kill or
injure the accused, and that the accused was justified in
believing from their conduct that such was their pur-
pose, he should be given the benefit of such doubt.
Even if following the ruling in *Mitchell's* case *supra*,
which certainly went a great length, the court could
properly have given this instruction to the jury, we do
not think he was bound to do so. The charge, as a
whole, was full, fair, clear and accurate, and, as will
presently appear, sufficiently covered the law of reason-
able fears and reasonable doubt. The following ex-
tracts from it show that the question as to what should
be the verdict of the jury in the event they should be
unable to determine what was the purpose and inten-
tion actuating the deceased and his brother, was not left
open; but the court expressly instructed them, in effect,
that though they should find that neither the deceased
nor his brother had any intention of injuring the ac-
cused, still, if the accused was justified in believing that
such intention existed, he could not be convicted. The
court charged: "There needn't have been actual danger

to McDuffie, but if the circumstances were of such a character as to have justified in a reasonably courageous man the belief that he stood in immediate peril of his life, or the infliction upon him of injuries amounting to a felony, and that acting under such fears and under such circumstances he took the life of the deceased, he could not be convicted." Such killing "would be justifiable under the law, although it may have appeared afterwards that such appearances of danger were false, and that there was, in fact, neither a design to take away his life or to inflict such injury upon him, nor real danger that it would be done." "Whenever a man exercises the right of self-defence, and sets up such right in answer to a charge of murder, he must be understood by the jury to have acted on the facts as they at the time appeared to him; and if, without fault or carelessness on his part, he was honestly misled as to the character and purpose of the conduct, and defended himself rightly and justly according to the facts as they at the time reasonably appeared to him, then he would be justifiable, even though the facts were otherwise, and there was in truth no real necessity for killing his adversary or adversaries." Thus it will be seen that the court placed the test of whether the accused was justified in acting as he did, not upon the *intention* or *purpose* of his adversaries, but upon their *actions* and *conduct* as such appeared to him at the time of the homicide. Certainly this was most favorable to the accused.

Whether the deceased or his brother really intended to inflict injury upon the accused, was an inference to be drawn by the jury from the conduct of the parties at the time of the killing. It stood as did any other conclusion of fact to be gathered from and considered as established by the evidence submitted. As ruled in *Vann* v. *The State*, 83 *Ga.* 44, the court having fully and fairly charged the doctrine of reasonable doubt, it

was unnecessary to repeat it at the end of every sentence of his charge when instructing the jury how they should find if they believed certain facts had, or had not, been established.    There can be no question that in this case the court gave the accused the full benefit of the law of reasonable doubt.    He began his charge by instruct-ing them that they would not be authorized to convict the accused " unless the evidence be of such a character as to satisfy their minds to a moral and reasonable cer-tainty, and beyond a reasonable doubt, of his guilt." After giving the particular instructions hereinbefore quoted, the court correctly defined to the jury what was the meaning of reasonable doubt, and then again in-structed them that if, after a careful investigation of the case, they should be satisfied to a moral and reasonable certainty, and beyond a reasonable doubt, of the guilt of the accused, they should convict; but if the evidence left such a doubt upon their minds touching the guilt of the accused, he was entitled to the benefit of that doubt and to a verdict of acquittal.    The court also in-structed the jury that if they had a reasonable doubt as to whether the accused was guilty of murder or of vol-untary manslaughter, they should find him guilty of voluntary manslaughter only ; and further, that if, after a careful investigation of the case, the evidence should leave it reasonably doubtful as to whether the accused was guilty of murder, or voluntary manslaughter, or was innocent under the idea of self-defence—if the evi-dence left it reasonably doubtful in regard to that,—the accused was entitled to the benefit of the doubt and to a verdict of acquittal.    Taking these instructions in connection with others, there can be no doubt, as already stated, that the charge as a whole was as full and clear, both upon the subject of reasonable doubt and of reason-able fears, as the accused had any right to expect.    In view of these instructions, the jury would have acquitted

him if a reasonable doubt had rested upon their minds that, in killing the deceased, he acted under the fears of a reasonable man that the deceased or his brother intended to kill or to seriously injure him, although it may afterwards have appeared that no actual danger really existed.

2. It was complained in the motion for a new trial that N. S. Knight, one of the jurors who tried the case, was not impartial. In support of this ground, it was shown by the affidavit of one P. Williams that about a year before the trial he and others, including Knight, were talking about the killing of Frank Kirkland, when Knight said that McDuffie ought to have his neck broken, and spoke about the matter in a very positive and angry manner. In response to this, Knight made affidavit that he did not make the statements contained in the affidavit of P. Williams; but that in reply to some question or remarks on the subject, and basing his opinion upon the rumors afloat in the country, he might have said that McDuffie ought to be hung, or would be hung; he, however, has no recollection of making any such remarks; if he did, it was merely the expression of an immature opinion shortly after the homicide, from mere rumors; that he had no well grounded, fixed or mature opinion as to the guilt or innocence of McDuffie, and his feelings toward McDuffie were and have remained entirely friendly; that when he was sworn at the trial as to his competency, he answered the questions propounded to him truly and exactly; that if the evidence had not shown the defendant guilty under the law, he could and would have returned a verdict of acquittal, and that he was governed solely by the evidence and the law. The trial judge was satisfied with this affidavit, and under the ruling in *Hill* v. *State*, decided at the present term (91 *Ga.*), there was no error in refusing to set the verdict aside on the ground that this juror was not fair and impartial.

3. One of the jurors was a grandson of Berry Griffis, whose brother, Samuel Griffis, married the grandmother of the prosecutor, and it is insisted that this juror was, in consequence, incompetent to try the case. It appears, however, that the prosecutor was not a descendant of this marriage, his father (J. C. Kirkland) having been born prior thereto, and not being the son of Samuel Griffis, but of another man. This being true, there was no relationship, either by blood or marriage, between the juror and the prosecutor, and consequently, there is no merit in this ground of the motion for a new trial.

4. It is well settled law in this State that threats made by the deceased against the accused, and communicated to the latter before the homicide, will not justify the killing unless, at the time of the killing, the deceased was making some effort to kill or seriously injure the slayer. This principle the court correctly and clearly gave in charge to the jury. It was insisted in the argument here that the court erred in not qualifying this statement of law by instructing the jury that while mere threats would not justify the killing, they should be given due weight in determining whether the accused acted under the fears of a reasonable man. We think this qualification was entirely unnecessary, it appearing that the judge in a previous portion of his charge, while instructing the jury upon the law of reasonable fears, expressly stated that the threats which had been proved to have been made by the deceased might be considered as illustrating his conduct at the time of the killing. He charged: "Therefore, gentlemen, you will see the importance of looking to the time of the commission of the offence, and viewing it in the light of all the circumstances which throw light upon it. We gather human intention from the manifestation of circumstances surrounding the parties at the time the act is committed. Threats of bodily harm may be considered by the jury

in connection with, and as illustrative of, any effort by the person making such threats to put them into execution." It is therefore manifest that the jury,—having been expressly instructed that they could consider such threats, and as to the purpose for which the threats had been admitted and were to be taken into account,—could not possibly have been misled by the charge to which exception is taken.

5. The principle announced in the 5th head-note is fully sustained by the ruling in *Gann* v. *State*, 30 *Ga.* 67, the leading case in this State upon the law governing mutual combat, and one which has been followed in the subsequent decisions of this court upon the subject.

6. Under the evidence contained in the record, the accused was sufficiently fortunate in escaping with a verdict of voluntary manslaughter. We are not prepared to say that the verdict should have been set aside had the jury found him guilty of murder, and we therefore decline to interfere with the judgment overruling his motion for a new trial.          *Judgment affirmed.*