### CRESS *v.* THE STATE.

1. Where in a trial of one under an indictment charging him with the offense of murder, the evidence discloses facts and circumstances which made it proper that the court should charge the jury the law of murder, of voluntary manslaughter, and of justifiable homicide, it was error for the court to charge unqualifiedly that, "If the weapon used was one which in its nature was not likely to produce death, the jury might infer a want of malice; and in such a case it would be voluntary manslaughter." Such a charge was open to the criticism that it tended to exclude from the consideration of the jury the defense of justifiable homicide. And the harmful effect of such a charge was not removed when the court, in a subsequent part of his general charge, gave to the jury instructions embracing the law of justifiable homicide. Such instructions were in conflict with the charge quoted, but were not explanatory nor qualificative thereof.

2. An error beneficial to a party affords him no ground for complaint.

3. Where the trial judge has once in his general charge fully and correctly stated the law of reasonable doubt, it is not necessary that he should repeat his instructions upon this subject in connection with each new proposition laid down.

4. The failure of the court to charge the jury upon the subject of the impeachment of witnesses does not constitute reversible error in the absence of a request in writing for such charge.

Argued October 17,—Decided November 7, 1906.

Conviction of manslaughter.　Before Judge Wright.　Walker superior court.　July 21, 1906.

Cress was indicted for the murder of Kane, and found guilty of voluntary manslaughter; and he assigns error upon the refusal to grant a new trial.　The State's evidence shows that a party of soldiers from Fort Oglethorpe were assembled at a club-room run by Beacon, where all had been drinking.　Cress and two others, who were together, had some difficulty with the bartender, and went outside, telling the bartender that if he "wanted any part of them, he could get it."　The bartender went to Kane and said, "Kane, I want you to see fair play;" and Kane said, "Certainly;" and he and one other immediately went out and got into a difficulty with Cress, in which difficulty Kane struck Cress a hard blow in the face.　Kane returned to the club, but Cress did not return.　Later in the evening Kane, together with several others, left the club and started back to the quarters, when they passed Cress and Jones sitting on the steps of Feihn's club house about fifty yards from Beacon's. Kane stopped near by for some purpose, and State's witnesses passed on and waited for him.　After waiting some time, witnesses went back and found Kane staggering around unconscious from a blow on the head.　Cress and Jones had disappeared.　Kane's skull was fractured in two places by a violent blow.　A stone could have caused the wound.　Kane died next day without having regained consciousness.　There was no further proof of the kind of weapon used.　A witness for the defendant stated that after the first difficulty at Beacon's, Cress and the witness went back to the quarters, but after a while returned to Fiehn's place and sat down on the steps.　While they were sitting there Kane and several others passed by, but Kane returned to where they were sitting and said, "What in the hell are you doing there?" and struck witness on the face.　Cress told him not to do that, and then Kane struck Cress and threw his hand to his hip pocket and said, "Damn you, I have got you."　Cress picked up a rock and threw, and hit Kane on the head.　The evidence for both the State and the defendant was voluminous, but the foregoing contains the sub-

stance of that which bears upon the questions made by the motion. for a new trial.

*John W. Bale* and *Charles R. Jones,* for plaintiff in error.

*W. H. Ennis, solicitor-general,* by *Walter B. Shaw,* contra.

BECK, J. (After stating the facts.) 1. The first ground of the amended motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'If the weapon used was one which in its nature was not likely to produce death, the jury might infer a want of malice; and in such a case it would be voluntary manslaughter; but if the killing was done upon a sudden heat of passion provoked by words or abusive language, then, nothing else appearing, the killing would not be voluntary manslaughter, but would be murder, if the weapon used showed an intent upon the part of the accused to take human life;' said charge being erroneous, and excluding from the consideration of the jury the defense of justifiable homicide set up by the accused." The exception to the charge appears to be well taken. There was evidence in the case from which the jury would have been authorized to find that the homicide was justifiable. They might have found, if they had believed the evidence introduced by the defendant, that the weapon used was one which in its nature was not likely to produce death, and they might have found from this and other facts in the case that the defendant did not act with malice, but that he struck the deceased with a rock to prevent the latter from making an unlawful and violent assault upon him, and yet they are instructed by the court that if they find that the weapon used was one which in its nature was not likely to produce death, want of malice might be inferred; in which case the killing would be voluntary manslaughter. This portion of the charge limited the jury absolutely to one verdict, even if they found that the accused had acted without malice and used a weapon not likely to produce death, without reference to the facts and circumstances testified to by witnesses in the case, which would have rendered the use of such a weapon justifiable. And the error was not cured by giving, in another part of the charge, the law of justifiable homicide. Having given erroneous instructions in one part of the charge, the harmful effects were not removed by a correct charge in conflict therewith, the jury's attention not being called thereto with directions as to which of the

conflicting instructions they should select as a guide.   *Florida C. & P. Ry. Co.* v. *Lucas,* 110 *Ga.* 121.

2. The court having charged the law of justifiable homicide, the failure to charge the law of "urgent danger, as contained in section 73 of the Penal Code," was not error of which the accused could complain.   If such failure was error at all, it was one beneficial to the plaintiff in error, and affords him no ground for complaint. *Atkins* v. *Paul,* 67 *Ga.* 97; *Partee* v. *Georgia Railroad,* 72 *Ga.* 347.

3. The court in the general charge had correctly and fully stated the law of reasonable doubt.   That he did not repeat it in charging upon certain particular phases of the defendant's contentions does not constitute error.   *McDuffie* v. *State,* 90 *Ga.* 786.

4. The principle stated in the fourth headnote has been frequently ruled by this court.

Judgment reversed.   All the Justices concur.