# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1911

---

### CARGILE v. THE STATE.

HOLDEN, J. 1. The evidence did not warrant a charge upon the subject of voluntary manslaughter; and even if the statement of the defendant warranted a charge upon this subject, there was no error requiring a new trial in failing to give it, there being no written request for such a charge. There is, therefore, no merit in the assignment of error that the court failed to charge upon the subject of voluntary manslaughter, or that the court erred in charging, "There are two questions to determine in this case: Did the defendant shoot and kill the person alleged to have been killed, as charged in the indictment, with a pistol; and if so, was he guilty of the offense of murder under the law and evidence, or was he justifiable in acting in self-defense," on the ground that such charge prevented the jury from finding the defendant guilty of voluntary manslaughter.

2. The court instructed the jury as follows: "Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts sustaining by their consistency the hypothesis claimed. The hypothesis claimed by the State in this case is, that the defendant shot and killed the person alleged to have been killed, and that he did

so with malice, as I have tried to explain that term. To warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused. So, in weighing testimony of this character, the evidence of this character must be, in the first instance, consistent with the guilt of the accused. In the second place it must exclude every other reasonable hypothesis save that of the guilt of the accused. If it is consistent with the guilt of the accused, you would not be authorized to convict under testimony of this character if there is any other reasonable hypothesis upon which you can reconcile the testimony and explain the testimony; if so, you would not be authorized to convict under the testimony of this character." This charge is not error on the ground that the court did not therein "charge the hypothesis of innocence," and did not therein charge "that if the proven facts were consistent with innocence, the defendant would be entitled to an acquittal."

3. The court charged the jury as follows: "It does not require any greater degree of mental conviction to base a verdict on circumstantial evidence than it does upon positive testimony. Whether circumstantial or positive, if the evidence satisfies your minds beyond a reasonable doubt of the guilt of the accused, it would be your duty to convict; otherwise it would be your duty to acquit." This charge was not error because the jury was instructed "that no greater degree of mental conviction on the part of the jury is required to convict on circumstantial evidence than on direct testimony." Penal Code (1910), § 1013.

4. One of the charges excepted to is as follows: "I call your attention to the law as applicable to the testimony denominated a confession. There is some testimony before you in this case relied upon by the State as a confession on the part of the defendant. To make a confession admissible at all, it must have been made voluntarily, without being induced by another by the slightest hope of benefit, or the remotest fear of injury. If the testimony is before you of the character of a confession, that evidence, before it can become testimony, must have been voluntarily made, without being induced by another by the slightest hope of benefit, or the remotest fear of injury. Confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction. As to what the extent of corroboration should be is a question alone for the jury to determine. There must be other evidence, however, to authorize a conviction upon a confession; some corroboration of the truth of the confession." This charge was not error requiring a new trial on the ground that in it the court "assumed that a confession had been made or proven in the case;" nor on the ground that "the court did not leave it to the jury to say whether a confession was made or not, but told the jury that it was a question for them to decide whether the confession was corroborated or not;" nor on the ground that "the court did not leave it to the jury to say what weight they would give the confession if one was made."

5. A juror is not disqualified because he is a first cousin of the wife of one who is a second cousin of the deceased. *McDuffie* v. *State*, 90 *Ga.* 786 (17 S. E. 105); *Smith* v. *Smith,* 119 *Ga.* 239 (46 S. E. 106).

6. The only grounds of the motion for a new trial not covered by the above rulings are the general grounds that the verdict is contrary to law and evidence and without evidence to support it. The evidence supported the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*

MARCH 14, 1911.

Indictment for murder. Before Judge Lewis. Jasper superior court. October 19, 1910.

The defendant was convicted of the murder of Ide Price, and to the order of the court overruling his motion for a new trial he excepted. The evidence in behalf of the State, delivered upon the trial, was substantially as follows: W. F. Malone testified that at the time of the homicide he was at his son's store, about 53 steps from the place where Price was killed. A short time before the homicide occurred, a Mr. Kelly was standing outside of the store, leaning in the window. The defendant "jerked a pistol out of Mr. Kelly's pocket, hip-pocket." Kelly asked the defendant to return his pistol; whereupon the defendant said "I will blow your brains out; I will give you what is in it." Kelly followed the defendant. The defendant asked the witness "if I knew where Ide Price was, . . a very few minutes after he got the pistol out of Kelly's pocket. . . Soon after he left me I heard the shooting. I went down to the shooting after he shot him, just as soon as he shot. I found Ide Price; he was dead. . . I found nothing on or near the ·deceased in the way of a weapon." There were three or four wounds on his body, made by a pistol. "I saw him [defendant] running off. I didn't see anything in his hand." Frank Malone testified that he was at his store when the shooting occurred. The defendant asked where Ide Price was. The defendant ·went to a "little shack," about 50 yards away, and "called for Ide twice." About five minutes thereafter the witness heard the shooting, and ran to the door of his store and saw Price stagger across a path and fall. About a minute or a minute and a half after the defendant got out of his sight the witness heard a pistol firing. The body of the deceased had one wound in the shoulder, two in the side, and "one in front." When the witness reached the body of the deceased, he saw the defendant rapidly "running across the field." Kelly picked up a pistol lying at the corner of the house, about 10 feet from where the deceased fell. It was Kelly's pistol. It was exactly like one the defendant got out of Kelly's pocket.

Fleet Minter testified that the night after the shooting the defendant "told him that he had always felt like he was going to kill Price, and all he hated him [?] about it, he believed he was asleep the first shot he shot him, and that he jumped up and he shot him the other shots." Adel Cason testified that the defendant said to him on the day of the shooting, about three and a half hours before the homicide, "he didn't give a damn about nothing; and he said he had killed one man and was going to kill another one." C. T. Thornton testified that after the homicide he asked the defendant, "what the trouble he and Price had, and he told me it was an old standing fuss they had a year or so before that, and that they renewed it down there about the dam somewhere." The defendant introduced no testimony, but made a statement, wherein he said that Joe Thompson cursed him and drew a pistol on him without any cause. Defendant didn't have any pistol, and walked away from him to keep from having any trouble with him. "And I went to that house, and I thought I saw him go around on one side, and I went back up there, and Kelly was standing there with his pistol sticking out of his pocket, and I pulled it out and went on down there, and Ide had come back, and I asked him was that Joe Thompson went around there, and he said, 'No, what do you want with him?' and I said, 'I want to see him.' He said, 'Throw in 75 cents and let's get a quart of liquor,' and I said, 'Ide, you don't need any more liquor; you have got enough in you now.' I says, 'I haven't got any money.' He said, 'You are telling a damn lie.' I said, 'I have spent it.' He said, 'You keep your damn money; you cheap son of a bitch, and go to hell with it'; and I said, 'You are another son of a bitch,' and he said, 'If you call me a son of a bitch I will kill you,' and throwed his hand in his pocket, and I shot six times as fast as I could, and I went off with my pistol in my hand. If he had not started in his pocket for his pistol I would never have killed him for nothing in the world. We never had a cross word before in our lives. As far as my making such a statement as Fleet Minter said, it is the biggest lie ever was told on this stand. He has broke the record of Jasper county for telling lies. I never told Adel Cason anything, he is another one about as good as Fleet Minter. They told as big lies as was ever told. That is all I have got to say about it." The defendant re-

ferred to matters other than those just stated; and there was testimony in behalf of the State, not deemed necessary to be set forth.

*John R. Cooper* and *H. D. D. Twiggs,* for plaintiff in error.

*H. A. Hall, attorney-general, Joseph E. Pottle, solicitor-general,* and *Greene F. Johnson,* contra.