No. 2196. APRIL 13, 1921.

---

### LANGSTON *v.* THE STATE.

On the trial of an accused person charged with murder, a confession alone, uncorroborated by other evidence, will not justify a conviction.

(a) Proof that the accused exhibited money to a witness will not suffice to corroborate a confession that the accused killed the deceased for the purpose of robbery and took the money from his person, there being no other evidence tending to show that the deceased had any money about his person at the time of the alleged homicide.

(b) On such a trial proof of the death of the person alleged to have been slain, and that his body was found at a particular place, was insufficient to corroborate a confession of the accused that he killed the

deceased at the place where his body was found, for the purpose of
robbery, there being no extraneous evidence sufficient to show that
death was caused by any criminal agency.

No. 2277.   APRIL 13, 1921.

Indictment for murder. Before Judge Park. Morgan superior
court.  October 12, 1921.

Henry Langston Jr. and John Henry Brady were charged with
the murder of Henry Moody by " shooting with a rifle and strik-
ing with an axe the said Henry Moody," thereby inflicting the
mortal wound.  On the separate trial of Langston, it appeared
that the deceased, a colored man 70 or 80 years of age, lived alone
on a plantation in a hut, situated in a pine thicket about one fourth
of a mile from the house of any other person.  He was last seen
alive Wednesday afternoon while working for his employer.  His
body was found on the floor in his house Friday afternoon next
ensuing.  Langston was a young colored man, had lived in the
neighborhood several years, and was acquainted with deceased.
Evidence was introduced as to certain confessions alleged to have
been made by Langston, to the effect that on Wednesday, while
he and Brady were working in a field together, they agreed " to go
over there that night and kill Uncle Henry."  They reached his
house about 8 o'clock and found him " getting supper — scraping
out the tray."  Defendant took his [deceased's] army rifle off the
bed and shot him in the back of the head, and Brady " hit him
with the axe."  They then ran out of doors and later came back
and " robbed him."  Langston got $83 and gave Brady $3.  When
asked why they killed him, Langston said, " We wanted the money."
Also a colored boy with whom Langston had been a companion for
several years testified, that " 2 or 3 days after the killing " he and
the accused were walking along the road, and, without being
questioned, the latter exhibited " about $85," which he had " in
an old pocket handkerchief " which was counted in witness's
presence; and Langston said " he had killed old man Henry
Moody and took the money off of him; . . he said it was on a
Wednesday night."  The same witness also testified:  " Henry
Moody is dead.  I have not seen him.  I remember about the
time " he " was killed."  The employer of Moody testified that
Friday afternoon, on being informed by another employee of the
discovery of Moody's body, he and others went to the house of
Moody.  The witness thus described the scene:  " When I got

there I didn't go in the house; when the door was opened I saw him lying on the floor. I did not inspect the place where he was wounded; a great many of them did though. He was dead when I saw him. . . I went as close to the door as from here to you. I made no examination of him at all. I don't know what killed him. Of my own knowledge I don't know how he came to his death. I believe he was killed on Wednesday night."

*Williford & Lambert,* for plaintiff in error.

*R. A. Denny,* attorney-general, *Doyle Campbell,* solicitor-general, *Graham Wright,* and *A. Y. Clement,* contra.

ATKINSON, J. It is declared in the Penal Code, § 1031: " All admissions should be scanned with care, and confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction." In *Lee v. State,* 76 Ga. 498, it was said: " In a criminal case the corpus delicti should be established beyond a reasonable doubt, or a conviction should not be had." In defining " corpus delicti " Wharton says: " It is made up of two elements: (1) That a certain result has been produced, as that a man has died, or a building has been burned, or a piece of property is not in the owner's possession; (2) that some one is criminally responsible for the result; e. g., on a charge of homicide it is necessary to prove that the person alleged in the indictment to have been killed is (1) actually dead, as by producing his dead body; (2) that his death was caused or accomplished by violence, or other direct criminal agency of some other human being." 1 Whar. Cr. L. (11th ed.) § 347. In 1 Wharton's Criminal Evidence (10th ed.), § 325 d, it is said: " The general rule in homicide is that the criminal agency — the cause of the death, the second element of the corpus delicti — may always be shown by circumstantial evidence. To sustain a conviction, proof of the criminal agency is as indispensable as the proof of death. The fact of death is not sufficient; it must affirmatively appear that the death was not accidental, that it was not due to natural causes, and that it was not due to the act of the deceased. . . It must affirmatively appear that death resulted from criminal agency. But the criminal agency is sufficiently shown where a dead body is found with injuries apparently sufficient to cause death, under circumstances which exclude inference of accident or suicide," etc. In harmony

with and in recognition of the principles stated in the foregoing excerpts taken from Wharton are numerous decisions of this court. In *Thomas* v. *State,* 67 *Ga.* 460, it was said: " A dead body found with a knife thrust across the throat and breast, sufficient to have caused death, and with no signs of accident or suicide about it, is sufficient to prove the corpus delicti of murder." In *Holsenbake* v. *State,* 45 *Ga.* 43, 56, it was said: " Our Code provides that ' a confession alone, uncorroborated by other evidence, will not justify a conviction.' It is contended that, by this clause of the Code, it is necessary there shall be corroboration of the confession in that part of it which acknowledges that the prisoner committed the crime. To make out any case of guilt, there are two essential ingredients: First, a crime must be committed, and the person charged must be the party who committed it. One of these elements is just as essential as the other. If one confesses that he has committed a crime, that is not sufficient to convict. But if it be proven that just such a crime as he acknowledges was in fact committed, does not this corroborate his confession? The Code does not fix the amount of corroboration. It does not say that it shall be corroborated in a number of particulars, but simply that a confession alone, uncorroborated by other evidence, shall not' be sufficient. To require a confession to be corroborated in every particular would be to say that a confession is not sufficient, unless there be other evidence, sufficient without the confession, which would be absurd. We do not feel authorized to draw any line. The confession must be corroborated, but how far, and in what particulars, is not said. That there has been an unlawful killing is, in a case of a charge of murder, one particular, and an important one. Each case must stand on its own footing, the jury being the judges. And if they convict on a confession which is corroborated by only one circumstance, the rule is complied with; the strength of that circumstance is to be judged of by the jury, according to the case. In the case before us, the confession is in fact corroborated in several particulars. The prisoner admits enmity to the deceased; the killing was with the weapons mentioned; it was an assassination, as mentioned," etc. See also *Brown* v. *State,* 105 *Ga.* 640 (31 S. E. 557). In *Murray* v. *State,* 43 *Ga.* 256, where, in a trial for arson in burning a gin-house, there was proof that the prisoner had confessed his guilt, saying

that he had " put fire to it at one o'clock at night," and no corroborating circumstance was proved, except that the house was consumed by fire about the hour of one o'clock at night, and that the prisoner resided about a mile from the spot, it was held that such evidence did not justify a conviction and was insufficient to sustain a verdict of guilty. In *Bines* v. *State,* 118 *Ga.* 320, 323 (45 S. E. 376, 68 L. R. A. 33), it is said: " Before there can be a lawful conviction of a crime, the corpus delicti, that is, that the crime charged has been committed by some one, must be proved." · In *Williams* v. *State,* 125 *Ga.* 741 (54 S. E. 661), it was said: " ' When a house is consumed by fire and nothing appears but that fact, the law rather implies that the fire was the result of accident, or some providential cause, than of a criminal design.' *Phillips* v. *State,* 29 *Ga.* 105. . . · In the present case, when the confessions of the accused are eliminated, the other evidence ,is not sufficient to show beyond a reasonable doubt that there was a willful and malicious burning of the house which was destroyed by fire." See also *Epps* v. *State,* 149 *Ga.* 484 (100 S. E. 568).

Applying the foregoing principles to the evidence in the case under consideration, was the verdict finding the defendant guilty of murder sustained? The confession alone by the defendant on trial would not suffice, under the plain language of the Penal Code, unless it was corroborated by other evidence. The evidence as to exhibition of money by the defendant, under the circumstances detailed by · the witness, would not corroborate the confession of the crime of murder, for several reasons; one reason being that there was no evidence that Henry Moody had any money at the time of the alleged homicide. With that question out of the way, the only remaining . possible corroboration of the confession is the evidence as to the corpus delicti — that is, that the murder was committed. The evidence as to the finding of the dead body was sufficient to show the first element to be proved. The second element, that is, that the death of Henry Moody was caused by a criminal agency, was not sufficiently proved. One witness testified: " I saw Henry Moody after he was killed." Another witness, in testifying as to a confession, said: " This was something like two or three days after the killing." The employer of the deceased testified: " I did not inspect the place where he was wounded; a great many of them did though. He was dead when I saw him.

. . I made no examination of him at all. I don't know what killed him." The expressions above quoted were by witnesses who did not witness the alleged homicide, and are not to be construed as showing an intention upon the part of the witnesses to testify that the deceased was "killed," or that the witness saw wounds on the body of deceased, or that there were any wounds on the body of the deceased which would tend to show that they caused his death by any criminal agency. The presumption is that the deceased came to his death by natural causes, and the evidence submitted was insufficient to overcome such presumption. The mere fact that the body was found on the floor was consistent with the theory of death by natural causes. Applying the rule that " In a criminal case the corpus delicti should be established beyond a reasonable doubt, or a conviction should not be had," the evidence was insufficient. Omitting from consideration the confession of the accused, as it should be because it was not corroborated, the verdict finding the defendant guilty was unauthorized by the evidence, and the judge erred in refusing a new trial.

*Judgment reversed. All the Justices concur.*