## SHEDD *v.* THE STATE.

No. 9917.   MARCH 13, 1934.

*Price Edwards,* for plaintiff in error.

*M. J. Yeomans, attorney-general, S. W. Ragsdale; solicitor-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general,* contra.

ATKINSON, J. ■ The ruling announced in the first headnote does not require elaboration.

■ The charge in the indictment is not for death of a mother pregnant with child, or for death of the child by reason of injury to the mother, and consequently does not involve application of the provisions of the Penal Code, §§ 80, 81, 82, relating to the subject of abortion. The charge is for murder of a child, and is defined in the Penal Code, § 60, which declares: "Murder is the unlawful killing of a human being, in the peace of the State, by a person of

sound memory and discretion, with malice aforethought, either express or implied." In Abrams v. Foshee, 3 Iowa, 274 (66 Am. D. 77), it was said: "To support an indictment for infanticide at common law, the rule as uniformly recognized is that it must clearly appear that the child was wholly born, and was born alive, having an independent circulation and existence: 3 Greenl. Ev. sec. 136." In State v. Winthrop, 43 Iowa, 519 (22 Am. R. 257), it was held: "An infant, even after birth, is not the subject of murder, until an independent circulation has been established." It was said in the opinion: "While the blood of the child circulates through the placenta, it is renovated through the lungs of the mother. In such sense it breathes through the lungs of the mother. Wharton & Stille's Medical Jurisprudence, 2d vol., § 128. It has no occasion during that period to breathe through its own lungs. But when the resource of its mother's lungs is denied it, then arises the exigency of establishing independent respiration and independent circulation. . . If we turn from the treatises on medical jurisprudence to the reported decisions, we find this difference, which is so emphasized in the former, made in the latter the practical test for determining when a child becomes a human being in such a sense as to become the subject of homicide. In Rex v. Enoch, 5 C. & P. 539, Mr. Justice J. Parke said: 'The child might have breathed before it was born, but its having breathed is not sufficiently life to make the killing of the child murder. There must have been an independent circulation in the child, or the child can not be considered as alive for this purpose.' In Regina v. Trilloe, 1 Car. & M. 650, Erskine, J., in charging the jury, said: 'If you are satisfied that this child had been wholly produced from the body of the prisoner alive, and that the prisoner willfully and of malice aforethought strangled the child, after it had been so produced, and while it was alive, and while it had an independent circulation of its own, I am of the opinion that the charge is made out against the prisoner.' See also Greenleaf on Ev., 3d vol., § 136. It may be asked why, if there is a possibility of independent life, the killing of such a child might not be murder. The answer is that there is no way of proving that such possibility existed if actual independence was never established. Any verdict based upon such finding would be the result of conjecture."

In State v. O'Neall, 79 S. C. 571 (60 S. E. 1121), it was held:

"To sustain a conviction for murdering an infant, it is necessary to prove the child was alive—that it had an independent circulation." It was said in the opinion: "And as it is stated in 1st Wharton's Criminal Law (8th ed.), page 336: 'In cases of infanticide it must be shown that the child was born alive, and for this purpose an independent circulation is necessary.' State v. Winthrop, 43 Iowa, 519. Again, on page 416 of the same volume, it is said: 'But it must be proven that the child had been born in the world in a living state; the fact that it had breathed for a moment is not conclusive proof thereof.'" Applying the principles stated to the evidence in the case, the judgment of the trial court was reversed. In Morgan v. State, 148 Tenn. 418 (256 S. W. 433), it was said: "We forbear a further discussion of the evidence, since the case must be reversed on account of the failure of the State to show that a murder was committed. In other words, there is no satisfactory proof that this baby was born alive. After the body of the infant was recovered, what is called the hydrostatic test was employed in an effort to ascertain whether the child was born alive. That is to say, the lungs of the child were removed from the body, and placed in a vessel of water. If a baby has breathed, and there is air in the lungs, they will float, and ordinarily it can be determined in this way whether a baby breathed or lived after its birth. In this case the lungs did float, but it seems that decomposition had set in, and gas had formed in the child's body when it was found, and the medical testimony is that gas in the lungs would cause them to float just as air would. . . The definition of murder contained in our Code is as follows: 'If any person of sound memory and discretion unlawfully kill any reasonable creature in being, and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of murder.' Thompson's Shannon's Code, section 6438. This is the same definition given by Lord Coke, Co. 3 Inst. 47, and by Blackstone, 4 Bl. Com. 195, except that in England the act is committed 'under the king's peace' and here it is committed 'under the peace of the State.' In order to become a 'reasonable creature in being,' a child must be born alive. It can not be the subject of a homicide until it has an existence independent of its mother. It is usually said that the umbilical cord must have been severed, and an independent circulation established. Ordinarily, if the child has breathed, this

would show independent life. But this test is not infallible. Sometimes infants breathe before they are fully delivered, and sometimes they do not breathe for quite a perceptible period after they are delivered. Generally, however, if respiration is established, that also establishes an independent circulation and independent existence." Upon application of the principles thus stated, the judgment sustaining the conviction of the reputed father of the child was reversed. See also 29 C. J. 1050, § 5.

In *Allen* v. *State,* 128 *Ga.* 53 (57 S. E. 224), it was held: "This was a prosecution of a mother for the murder of her newborn babe. The child was a bastard. There was evidence sufficient to authorize a finding that the child was born alive, and that the mother killed ·it by inflicting injuries upon its head. No error of law is complained of. The refusal of a new trial will not be reversed." This is a recognition of the principle that, to be the subject of murder under the law of this State, the infant must have been born alive. The reported case does not show the facts, but the transcript of the record on file in this court shows that the infant after having been delivered by the mother was heard to cry and was seen to breathe. In the instant case there was no direct evidence or statement of the defendant before the jury that the infant was born alive. Eight or nine days after the infant had been buried a physician performed an autopsy. The body was badly decomposed. One lung was removed and given the hydrostatic test and otherwise examined. The doctor testified in part: "My opinion as a physician and surgeon, from my observation and experience and medical science, is that this child breathed after it came into the world." This was not an unqualified statement of opinion that the child was born alive, or that it had acquired "independent circulation and existence" separate from its mother. The testimony of the physician as a whole was consistent with the theory that the child was born dead, and there was no other evidence tending to show that it was born alive. The evidence being of this character was insufficient to establish the corpus delicti beyond a reasonable doubt, and the court erred in refusing a new trial. *Judgment reversed. All the Justices concur.*