WRISPER, *alias* RESPASS, *v.* THE STATE.

No. 13920. NOVEMBER 12, 1941.

██ 

*Milton M. Ferrell, Harry S. Strozier,* and *Thomas W. Johnson,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Charles H. Garrett, solicitor-general, E. J. Clower* and *C. E. Gregory, assistant attorneys-general,* contra.

GRICE, Justice. Before there can be a lawful conviction of a crime, the corpus delicti, that is, that the crime charged has been committed by some one, must be proved beyond a reasonable doubt. *Shedd* v. *State,* 178 *Ga.* 653 (173 S. E. 847). In homicide cases it must be proved that the death was caused or accompanied by violence or other direct criminal agency of some other human being. *Langston* v. *State,* 151 *Ga.* 388 (106 S. E. 903). The first inquiry is, was the proof as to the corpus delicti sufficient? It may be shown by indirect as well as direct evidence. *Buckhanon* v. *State,* 151 *Ga.* 827 (108 S. E. 209) ; 1 Whart. Cr. Ev. (10th ed.), § 325d; 26 Am. Jur. § 462. The jury had a right to believe that the body found was that of the person alleged to have been murdered, in view of the testimony as to the teeth, the hat, the belt, and the shoes. *Mathis* v. *State,* 153 *Ga.* 105 (111 S. E. 567) ; 3 Warren on Homicide, 111, § 270. The jury also could have concluded that the dead woman was murdered. When in apparent good health, and with nothing to show any mental disturbance, she was last seen alive, she parted on the street from a companion, indicating to the latter that she would be back in a few minutes. She did not return. About nine days later her body was found in a secluded spot in a ditch covered over with corrugated paper on which bricks lay. Some of her front teeth were missing, and were found near the body. These circumstances, a more detailed account of which is set forth in the preceding statement of facts, were sufficient to convince the jury that the deceased did not come to her death from natural causes, but that it was the result of a criminal agency. Compare *Buckhanon* v. *State,* supra. When the body was discovered it was almost devoid of flesh. It showed no marks of unmistakable personal violence; but some of her natural teeth were out of her mouth and scattered on the ground near by. Bricks and brickbats were placed on top of the paper with which the body

was covered. The indictment charged that the deceased was murdered with a bludgeon and blunt instruments, including brickbats, and with a knife, dirk, razor, and other sharp instruments, and with a gun and pistol, and with human hands, by striking, beating, wounding, cutting, stabbing, and choking her, "the exact manner of inflicting death and the exact instrument used by the said accused for the purpose of inflicting death and the manner of inflicting death being to the grand jurors unknown." Although it was a part of the burden resting upon the State to prove that the deceased came to her death by one or more of the means charged, as was held in *Warren* v. *State*, 153 *Ga.* 354 (112 S. E. 283), this too may be proved by circumstantial evidence, and in our opinion this burden was carried in the instant case. Jurors must be allowed some leeway for the exercise of their reasoning powers in drawing deductions from a given state of facts and circumstances. To hold that the State, in a situation such as is here presented, must produce more definite proof than was done as to the means by which death was inflicted might be the equivalent of requiring the impossible.

Was the guilt of the accused proved beyond a reasonable doubt? The evidence was circumstantial. In such cases the yardstick by which to measure the sufficiency of the proofs is to be found in the Code, § 38-109: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Counsel for the plaintiff in error rely principally on *Murray* v. *State*, 43 *Ga.* 256; *Lee* v. *State*, 76 *Ga.* 498; *Bines* v. *State*, 118 *Ga.* 320 (45 S. E. 376, 68 L. R. A. 33); *Warren* v. *State*, supra; *Reynolds* v. *State*, 170 *Ga.* 810 (154 S. E. 229); *Graham* v. *State*, 183 *Ga.* 881 (189 S. E. 910); and particularly on *Epps* v. *State*, 149 *Ga.* 484 (100 S. E. 568). All of these cases are distinguishable from the one at bar. *Murray* v. *State*, supra, was an arson case; and as far as pertinent here, it was merely held that proof that a house was consumed by fire was not, in the absence of corroborating circumstances, sufficient to show the corpus delicti. The *Lee* case was one in which a mother was indicted for the murder of her child. The physician sworn for the State testified that there were no marks of violence upon it, that he did not know whether it had died from exposure

or had been smothered, that it might have died from natural causes. This court held that from that evidence no conclusion could be drawn that the child had been murdered. *Bines* v. *State,* was an arson case, this court holding that, there being no proof of the incendiary origin of the fire, the defendant could not be convicted by his mere extra-judicial confession. The judgment in *Warren* v. *State,* a murder case, was reversed because there was no proof of the corpus delicti, the court holding that there was no evidence that death was caused by any direct criminal agency of some other human being, or that it was not accidental or due to natural causes, the proof showing that the deceased was an epileptic, and a part of her body was lying on the hearth of a cabin occupied by her. The front part of her body "from the head down was charred." In the *Reynolds* case, the accused was indicted for the murder of Mincie by shooting him with a gun. It appeared that on the night of the homicide the house of the deceased was burned. A crowd soon gathered, among them the accused. On that same night, shortly before the fire, he was seen going in the direction of Mincie's. There was proof of a wound on the body of Mincie, believed to be from a shotgun. A barrel of a shotgun was found in the house after the fire. A witness who examined it testified that it contained the same sight he had put on the gun for the defendant in 1927. The fire occurred May 14, 1929. The court held, on a consideration of that evidence, that the verdict was unsupported. The *Shedd* case was where a woman was indicted for the murder of her infant child. The judgment was reversed because the evidence failed to show that the child was born alive. *Graham* v. *State* was a murder case, a husband being charged with shooting his wife. Near the body was a shotgun with the barrel resting against the side of the bed, a fire-poker hanging in the trigger guard. There was testimony tending to show that the death was the result of suicide, and little or no motive shown for the husband to take her life. This court held that the evidence did not exclude every reasonable hypothesis save that of guilt. Defendant's counsel draws a parallel between the *Epps* case and this case. There a mother was charged with the murder of her four-year old, deformed, and helpless child. There was evidence from which the jury could have inferred that she did not love the child. She admitted that she had at night buried its body, but insisted that the child had died a natural death; and

there was no direct proof to the contrary. In explanation of her conduct, she said that, finding that it had died, she was frightened and had neither money nor friends. In the *Epps* case there was no evidence that the accused had on previous occasions violently attacked the child, or made any threats against its life. Both these elements were present in the instant case. This court held in the *Epps* case that the evidence, being circumstantial, was insufficient to convict. Running, however, through these cases which are relied on, and many others, is the premise that a mere suspicion of a person's guilt, no matter how strong that suspicion be, can never support a verdict of guilty. That much is conceded. In an early case it was said: "It is enough that the evidence, whatever be its character, whether positive or presumptive, direct or circumstantial, satisfies the understanding and conscience of the jury." *Giles* v. *State*, 6 *Ga.* 276, 286. To the same effect see *Mitchum* v. *State*, 11 *Ga.* 615, 621. Nor is it incumbent on the State "to show that it is impossible for the offense to have been committed by anybody else, or that it might by bare possibility have been done by some one else; but the State should show that it was the prisoner to a moral certainty." *Houser* v. *State*, 58 *Ga.* 78. This statement was repeated in *Johnson* v. *State*, 73 *Ga.* 107. In *Cargile* v. *State*, 136 *Ga.* 55 (3), 56 (70 S. E. 873), the following charge was approved: "It does not require any greater degree of mental conviction to base a verdict on circumstantial evidence than it does upon positive testimony. Whether circumstantial or positive, if the evidence satisfies your minds beyond a reasonable doubt of the guilt of the accused, it would be your duty to convict; otherwise it would be your duty to acquit." The word "hypothesis" as used in the Code section hereinbefore quoted is preceded by the word "reasonable." We approve the statement with respect thereto contained in the opinion of the Court of Appeals of this State in *White* v. *State*, 18 *Ga. App.* 214 (89 S. E. 175), to wit: "The term 'hypothesis,' as used in the Penal Code in the rule as to what is necessary to warrant a conviction on circumstantial evidence (§ 1010) [1933, § 38-109], refers to such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life."

We shall not recapitulate the evidence. The further observation might be made that a reasonable inference therefrom is that the

accused had knowledge of her death before the discovery of her body. The statement in *Thomas* v. *State*, 67 *Ga.* 460, 465, applies here: "The evidence is all circumstantial; yet it points steadily to the prisoner as the criminal actor in the deed of blood. The finger posts direct the searcher for truth nowhere else." There was no error in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*