## McVEIGH *v.* THE STATE.

No. 16612. MAY 12, 1949.

Louis H. Mitchell, D. E. Griffin, and McDonald & McDonald, for plaintiff in error.

Eugene Cook, Attorney-General, Harvey L. Jay, Solicitor-General, and Rubye G. Jackson, contra.

WYATT, Justice. ■ The State's case was based upon the theory that the defendant, Johnny McVeigh, and Dave Walden were employed by Godwin Davis, Joe Allred, and Clarence Revels to murder John Frank Stringfellow; that Stringfellow was a material witness for the Government in a case pending in the Federal court in Alabama against Davis, Allred, and Revels; that on or about September 12, 1944, Stringfellow left Phenix City, Alabama, in company with Dave Walden; that thereafter Walden and the defendant carried Stringfellow to a house belonging to the defendant's wife, and located in Fitzgerald, Georgia, and there the defendant administered to Stringfellow a lethal shot of narcotics for the purpose of killing him; that Stringfellow died as a result of the administration of the narcotics, and Walden and the defendant transported his body to Florida, where they stripped the body of clothing, except for shoes, fired a shot into the head of the corpse, wrapped it in a blanket, and buried it covered with lime in a secluded spot; that the defendant and Walden also murdered Patricia Walden, who was Walden's wife, and buried her body in a grave in the Okefenokee Swamp; that Dave Walden made a plenary confession to both crimes, and led the officers to the grave of Stringfellow; and the defendant made a plenary confession to both crimes and led the officers to the grave of Patricia Walden; that at least one of these confessions was made by Walden and the defendant in the presence of each other.

On the general grounds of the motion for new trial, this case turns upon a consideration of whether the corpus delicti was sufficiently proved. To sustain a conviction of murder, it is necessary that the corpus delicti be proved beyond a reasonable doubt. Lee v. State, 76 Ga. 498; Epps v. State, 149 Ga. 484 (100 S. E. 568); Wrisper v. State, 193 Ga. 157 (17 S. E. 2d, 714).

The Code, § 38-420, provides: "A confession alone, uncorroborated by any other evidence, shall not justify a conviction." However, proof of the corpus delicti is sufficient corroboration of the confession. Daniel v. State, 63 Ga. 339; Paul v. State, 65 Ga.

152; *Westbrook* v. *State,* 91 *Ga.* 11 (2) (16 S. E. 100); *Owen* v. *State,* 119 *Ga.* 304 (2) (46 S. E. 433). But such proof of the corpus delicti may not rest upon a mere extrajudicial confession alone. There must be aliunde proof of the corpus delicti. *Smith* v. *State,* 64 *Ga.* 605; *Williams* v. *State,* 125 *Ga.* 741 (2) (54 S. E. 661); *Clay* v. *State,* 176 *Ga.* 403 (168 S. E. 289).

"In defining corpus delicti Wharton says: 'It is made up of two elements: (1) That a certain result has been produced, as that a man has died, or a building has been burned, or a piece of property is not in the owner's possession; (2) that some one is criminally responsible for the result; e. g., on a charge of homicide it is necessary to prove that the person alleged in the indictment to have been killed is (1) actually dead, as by producing his dead body; (2) that his death was caused or accomplished by violence, or other direct criminal agency of some other human being.' 1 Whar. Cr. L. (11th ed.), § 347. In 1 Wharton's Criminal Evidence (10th ed.), § 325 d, it is said: 'The general rule in homicide is that the criminal agency—the cause of the death, the second element of the corpus delicti—may always be shown by circumstantial evidence. To sustain a conviction, proof of the criminal agency is as indispensable as the proof of death. The fact of death is not sufficient; it must affirmatively appear that the death was not accidental, that it was not due to natural causes, and that it was not due to the act of the deceased. . . It must affirmatively appear that death resulted from criminal agency." *Langston* v. *State,* 151 *Ga.* 388, 390 (106 S. E. 903).

"One element of the corpus delicti is just as essential as the other. . . In the absence of extraneous evidence of all elements of the corpus delicti, the proof is insufficient to corroborate the confession." *Grimes* v. *State,* 204 *Ga.* 854 (51 S. E. 2d, 797).

Applying the foregoing principles to the evidence in this case, was the verdict finding the defendant guilty of murder sustained? Since the confession alone will not suffice, it is necessary to determine whether the corpus delicti has been prima facie established by independent evidence. If so, then the confession might be considered by the jury, in addition to the independent proof, in determining whether the corpus delicti had been satisfactorily proven. *Grimes* v. *State,* supra.

Unquestionably, the first element of the corpus delicti; that is, that the person alleged to have been killed is actually dead, was sufficiently established by independent evidence. The testimony of the brother of the deceased alone, if believed by the jury, was sufficient for this purpose.

We think, also, that the second element of the corpus delicti, that is, that death was due to a criminal agency, was sufficiently established by independent evidence, although resting upon rather meager circumstantial evidence. The evidence showed that the skeleton of a human being was found buried in a palmetto thicket, with no marker of any kind at the grave, and with rotten limbs piled on top of the grave. The grave was located in wild country, and was full of lime. There were no clothes in the grave, but a portion of a shoe and a blanket were found with the skeleton. The manner of burial, the place of burial, the condition of the grave, and the condition of the body all tend to show that someone was interested in removing the deceased from society and doing away with the body in such a manner that it could never be located, and, if located, in such a manner that the body would have become consumed by lime and thus rendered unrecognizable or unidentifiable. These circumstances are incompatible with the theory that the death of the deceased was accidental, or due to natural causes, or the act of the deceased. Compare *Wrisper* v. *State*, 193 *Ga.* 157 (17 S. E. 2d, 714) ; *Buckhanon* v. *State*, 151 *Ga.* 827 (108 S. E. 209).

We might further mention that Walden, an accomplice, made a plenary confession, in the presence of the defendant, in which he gave an account of the homicide similar to an account then given by the defendant; that Walden led the officers to the grave where Stringfellow's body was buried; and that the defendant led the officers to the grave of another person, whom both Walden and the defendant admitted having murdered and buried.

Counsel for the plaintiff in error urge that there is still another element necessary to be proved in establishing the corpus delicti; that is, that the crime was committed as charged in the indictment, citing in support of this contention *Warren* v. *State*, 153 *Ga.* 354 (112 S. E. 283), *Graham* v. *State*, 183 *Ga.* 881 (189 S. E. 910), and *Grimes* v. *State*, supra, the latter two cases being

ones in which a statement from the *Warren* case was quoted with approval. A cursory examination might lead one to the conclusion that the *Warren* case supports counsel's contention, but we think that a careful analysis of that decision will reveal that the import of the ruling was otherwise. The *Warren* case was one depending wholly upon circumstantial evidence, no confession being involved. The court there ruled in the second headnote: "To sustain a conviction in a case of homicide, it is essential, to prove the corpus delicti; that is, first, that the person alleged in the indictment to have been killed is actually dead, and second, that the death was caused or accomplished by violence, or other direct criminal agency of some other human being, that is, it was not accidental, nor due to natural causes, nor to the act of the deceased; *and that the accused caused the death by one or more of the means charged.* (a) The evidence was insufficient to establish the second element of the corpus delicti, and that the accused was guilty as charged." (Emphasis ours.) An analysis of this ruling will reveal that the court actually held that it is necessary to prove the corpus delicti (and then set forth the first and second elements of the corpus delicti), and in addition thereto, it is necessary to prove that the accused committed the crime by one or more of the means charged. If the first paragraph of the headnote might lead one to conclude that the court ruled that proof of the means charged was a part of the corpus delicti, the subparagraph of the headnote should clarify the confusion. The court did not rule that the evidence was insufficient to establish the second and third elements of the corpus delicti, but ruled that the evidence was "insufficient to establish the second element of the corpus delicti, and that the accused was guilty as charged." It seems clear, therefore, that the court was dealing with the corpus delicti as containing two elements only, and was dealing with proof of the corpus delicti and proof of death by the means charged separately.

If there be any doubt about the true import of the headnote of this decision, we think that the body of the opinion should dispel it. The court held: "Before a conviction can be legally had on the charge of murder, it is essential, in proving the corpus delicti, to show that the person alleged in the indictment to have been killed is actually dead, and that the death was caused or

accomplished by violence, or other direct criminal agency of some other human being." The court then cited authority for this statement, and further held: "To authorize a conviction in this case, it was necessary for the State to prove beyond a reasonable doubt that Lucinda Underwood was dead, and that she was killed by being choked or strangled with the hands of the defendant, or by being smothered or suffocated by having her head wrapped up with a quilt by him, or by his burning her with fire. And the evidence being wholly circumstantial, the proved facts had not only to be consistent with the hypothesis that the defendant caused her death by one or more of such methods, but had to exclude every other reasonable hypothesis save that of her [his] guilt as charged."

The latter quotation is a correct statement of the law, it undoubtedly being true that the evidence must prove beyond a reasonable doubt that the defendant caused the death by the means charged; but we think it is apparent that the court was dealing with this phase of the case separately from the question of proof of the corpus delicti, and the elements thereof, as defined by the court. Finally, the court said: "A reversal of the overruling of the motion for a new trial must be had, for the reasons that the evidence was not sufficient to show, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis, that the death of Lucinda Underwood was caused by a criminal agency, and was not the result of accident, or disease, or of her own act; and that, considering the testimony of Ida Cunningham as true, it wholly fails to prove the necessary elements of criminal agency of the corpus delicti, and fails to prove that the defendant caused the death of Lucinda by one or more of the means charged in the indictment." Again, it is apparent that the court was dealing with the sufficiency of the proof of the second element of the corpus delicti as one thing, and the sufficiency of the proof that death was caused by one or more of the means charged as an entirely different proposition.

Accordingly, it is our opinion that the purport of the ruling in the *Warren* case was to the effect that the evidence, in order to sustain a conviction, must establish the two elements of the corpus delicti; and in addition thereto, there must be evidence sufficient to prove beyond a reasonable doubt that the accused

committed the crime in the manner charged in the indictment.

The *Warren* decision is not by a full bench, and anything in the decision contrary to the construction we have placed upon it is expressly disapproved as being unsound and contrary to full-bench decisions of this court, holding that the elements of the corpus delicti are (1) death, and (2) that the death was due to a criminal agency. See *Langston* v. *State,* supra. As stated in 41 C. J. S. 16, § 312, "The manner and means in and by which the crime was committed are not elements of the corpus delicti." The *Graham* and *Grimes* cases, supra, citing the *Warren* case with approval, are not controlling on the question here raised, for both of those cases turned upon a determination that the evidence failed to establish the criminal agency (the second element of the corpus delicti), and neither case dealt with the point here considered.

There being evidence, independent of the confession, sufficient to prove the two essential elements of the corpus delicti, such independent proof, in corroboration of the confession, was sufficient to support the verdict finding the defendant guilty. Accordingly, since it is unnecessary that a confession be corroborated by independent proof in all its details and particulars (*Holsenbake* v. *State,* 45 *Ga.* 43), and since a confession is direct evidence and not circumstantial evidence, the confession was sufficient to prove the manner and means of death as charged in the indictment, without independent corroborating evidence, just as it is the rule that "once the requirement of the corpus delicti is met, the confession of the accused is available to identify the person confessing as the criminal agent." 26 Am. Jur. 425, § 383; *Cochran* v. *State,* 113 *Ga.* 726 (7), 736 (39 S. E. 332). Any other rule would have the effect of completely annihilating the long-established rule, laid down in many decisions of this court, to the effect that proof of the corpus delicti is sufficient corroboration of a confession, and such evidence will sustain a conviction of murder.

(a) Special grounds 5 and 6 contend that the State failed to prove the venue. This contention is based upon the ground that the State relied upon the confession alone for such proof. For the reasons given in the immediately preceding paragraph of this opinion, this contention is without merit.

In addition to the accused's confession, in which he stated that he killed the deceased at the home of his wife, Katie, located at 411 E. Magnolia Street, in the City of Fitzgerald, Ben Hill County, Georgia, there was evidence to the effect that 411 E. Magnolia Street in the City of Fitzgerald, Ben Hill County, Georgia, was the property of the defendant's former wife, Katie McVeigh. Compare *Dowdell* v. *State,* 200 *Ga.* 775 (38 S. E. 2d, 780) (where the accused pointed out to officers the place where the shooting occurred, and a witness testified that this location was in the county where the trial took place), and *Davis* v. *State,* 66 *Ga. App.* 877 (4), 880 (19 S. E. 2d, 543). The evidence warranted the verdict.

■ Special ground one complains of the admission in evidence of a photostatic copy of an original Army health record, containing a dental chart. The objection urged to this evidence was that it had not been proven or identified by Paul T. Scollard, the person purporting to have prepared the record, and none of the witnesses who testified with reference to the chart had seen it prepared.

In *Pressley* v. *State,* 205 *Ga.* 197 (3) (53 S. E. 2d, 106), this court held: "A health record of its enlisted personnel, kept by the United States Navy, is a public record, but, in the absence of an admission in open court that a document offered as such is in fact the original record, its contents can be proved only by a duly certified copy thereof."

There was no objection to the evidence in the instant case upon the ground that it was not duly certified as required by law, and such a question is not raised in the brief of counsel for the plaintiff in error. The brief of evidence fails to disclose whether the photostatic copy was duly certified, containing only an abstract of material portions of the chart. Assuming, however, that it was not duly certified, as some evidence in the brief of evidence would indicate, there was no error committed in admitting the chart, since no valid objection was urged to its admission upon this ground. Irrespective of whether such evidence was of probative value, other evidence introduced amply proved the first element of corpus delicti, that is, the death of John Frank Stringfellow.

Being a public record, the evidence was admissible without

proof of its authenticity by the person who prepared the record, such records being sufficiently proved by a certified copy thereof; and the trial judge did not err in admitting the evidence over the objection urged.

■ The trial judge did not err in allowing a witness for the State, a Lieutenant Colonel in the United States Army, to testify that he knew of his own knowledge that dental records similar to those introduced in evidence were used to identify deceased soldiers.

■ The trial judge did not err in failing to charge the law of alibi, no written request for such a charge having been made, and such a defense, if raised, being raised only by the defendant's statement. *Watson* v. *State*, 136 *Ga.* 236 (5) (71 S. E. 122).

■ Special ground four complains of the following charge of the court: "The State contends that the alleged confession has been corroborated. In the first place, the State contends that the alleged confession was made freely and voluntarily on more than one occasion, and was made without the slightest hope of reward or the remotest fear of injury, and the State further contends that the alleged confession was corroborated by the alleged discovery of the skull and bones of the head of the deceased, and that the defendant admitted that the place where the alleged skull and bones were concealed, were admitted in the statement made by the defendant, that that was the skull and bones of the deceased. Now that is the contention on the part of the State."

This charge, in which the trial judge was merely charging the contentions of the State, did not amount to an expression of opinion as to what had been proved, and it is not subject to the criticism that there was no evidence upon which to base such a charge.

■ Finally, it is contended that there was no evidence showing the date when the alleged crime was committed. This contention is without merit. While the evidence fails to disclose the exact date when the crime occurred, there is ample evidence showing that the crime was committed prior to the return of the indictment on April 12, 1948. The written confession of the accused was dated prior to this date. As to the crime of murder, there is no statute of limitations; and proof that the crime was committed prior to the return of the indictment is sufficient.

*Judgment affirmed. All the Justices concur.*