White *et al. vs.* Dinkins *et al.*

No. 55.——JOSEPH WHITE and another, plaintiffs in error, *vs.* WILLIAM J. DINKINS and others, defendants in error.

[1.] It is error to refuse to defendant the privilege of cross-examining the plaintiff's witness, as to the facts which would, if proven, defeat the action; nor is the error cured because the witness is subsequently introduced by the defendant and examined as to those facts.

[2.] Where the defendant in trover relies upon two separate and distinct grounds of defence, and the Court, by its charge, submits the case to the Jury upon one of them only, and in such a way as to exclude, entirely, the other from their consideration, it is an error for which a new trial will be granted.

[3.] A trustee may sell the property of his *cestui que trust*, to defray the ex-

White *et al. vs.* Dinkins *et al.*

penses of litigation to protect the trust estate: *a fortiori* may such sale be ordered by the Chancellor, where the *cestui que trusts* are infants.

[4.] If the defendant in trover relies, amongst other things, upon paramount outstanding title in another, the acts and declarations of the third person, disclaiming title in himself and acquiescing in the plaintiff's title, are admissible in evidence.

Trover, in Sumter Superior Court. Tried before Judge PERKINS, August Term, 1855.

William J. Dinkins and others, the children of Elizabeth Dinkins, brought trover against the plaintiffs in error, for a negro man Lev or Levi. They claimed under a deed of trust, made 8th May, 1827, by Wm. P. Brown, the father of Mrs. Dinkins, by which she had a life estate, and these children an interest in remainder. The defendants below claimed, by virtue of a sale by the Sheriff, under a decree or order of the Court, directing the sale of this negro, to pay the fees of the Counsel of Mrs. Dinkins, incurred in litigation previously pending. They also proved, by Horace Dinkins, the father of the plaintiffs below, that the mother of the boy Levi, though included in the deed of trust, was his property before the deed was made, having been sent home with his wife in 1820 or 1821. The plaintiffs below, in rebuttal, offered to prove, by Wright Brady, the admissions of Horace Dinkins, subsequent to the deed, that the negroes were the trust property of his wife. The Court admitted the evidence, and defendants below excepted. For the same purpose, the Court admitted the Sheriff's advertisement, and also the record of a bill in Equity, filed by Horace Dinkins as the next friend of his wife, for the appointment of a trustee. To this, also, the defendants excepted.

The Court charged the Jury, among other things, that if they believed Horace Dinkins surrendered or yielded his title to the negro, and allowed and acquiesced in her being included in the deed of trust, they should find for plaintiff. To this charge defendants excepted.

On these exceptions error is assigned.

White *et al. vs.* Dinkins *et al.*

WARREN; E. R. BROWN, for plaintiffs.

STUBBS & HILL; McCAY, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

It is very apparent that injustice has been done in this case.

[1.] The defendants rely, first, on the title which they acquired under the sale ordered by the Court; and secondly, they insist that if this is not valid, the paramount title to this property is outstanding in Horace Dinkins; and that, consequently, the plaintiffs in trover cannot recover.

The plaintiffs offered James P. Guerry to prove property in Wm. P. Brown to Cela, the mother of Lev. The defendants proposed to show, by the same witness, upon cross-examination, that shortly after the marriage of Horace Dinkins with Eliz. Brown, the daughter of Wm. P. Brown, that Cela was sent home to her, and that she had remained in possession of Dinkins and wife, in Houston County, for many years before the deed of trust was executed. Hence, they infer a gift; and this is the outstanding title which they set up in Dinkins.

But the Court disallowed this testimony. Counsel for the defendant in error concede that this was wrong, but contend that the error was cured, inasmuch as Guerry was subsequently introduced by the defendants in chief, and testified to the facts sought to be drawn out upon his cross-examination.

But this will not do. The practical effect of this error was, to change the whole line of defence. The cross-examination of Guerry would have sent the plaintiffs out of Court, had the case stopped there; whereas, by rejecting it the burden was cast upon the defendants to make out Dinkins' title.

[2.] But this is not the only nor principal error manifest upon this record. The charge of the Court, in express terms,

excluded from the consideration of the Jury the title of the defendants, derived from the sale of Lev, ordered by the Court, and on which they mainly relied, and restricted them entirely to Horace Dinkins' title.   The Court instructed the Jury, that if they believed that upon the marriage of Horace Dinkins with Elizabeth Brown, or soon thereafter, the father sent Cela home with his daughter, without the right to reclaim the girl, that by construction of law the title to the girl vested in Horace Dinkins, and they should find for the defendants, unless they believed, from the evidence, that Horace Dinkins surrendered the title thus acquired to Cela, and acquiesced in her being included in the deed of trust from Wm. P. Brown to Mrs. Dinkins and her children.   In that event, the Jury should find the property for the plaintiff.

Now all this is correct, so far as Dinkin's title is concerned. But what becomes of the title derived from the judicial sale to Lev, the son of Cela?  Is it not plain, that it was withheld altogether, by the charge, from the consideration of the Jury ?   It may be true, that Horace Dinkins lost the title acquired by marriage to this property; and yet, the plaintiffs may not be entitled to recover it.   It was sold by order of the Chancellor, to discharge the debt due to Counsel for professional services, alleged to have been rendered the trust estate.   And if this be so, their title to the negro is perfect, notwithstanding it may have been surrendered by Dinkins to his father-in-law, which we have no doubt it was competent for him to do,  provided the rights of creditors or third persons were not prejudiced thereby.

[3.] The great question, we apprehend, in this case is, did the sale under the order of the Judge divest the title of the children who have brought this suit ?   It is insisted that the life estate of Mrs. Dinkins, only, was sold, and that the interest of the remainder-men was not and could not be impaired. This depends upon the object of the bill filed against the former trustee and in the prosecution of which the professional services were rendered; and for the payment of which Lev was ordered to be sold.   If the benefits of that litigation re-

sulted to the children, as well as to the mother; and was necessary for the preservation of the *corpus* of the trust estate, as well as the income; in that event, the remainder-men should defray their proportion of the expense. The original bill was given in evidence on the trial, but there is no copy in the record. The presumption, of course, is in favor of the order if, indeed, it requires any presumption to support it. It may well be doubted whether it can be controverted, at any rate, so as to affect the title of the purchaser. The Chancellor was, *virtute officii*, the guardian of these wards; and if the doctrine be true, and we believe it to be incontrovertible, that a trustee, without any authority from the Court, may sell trust property to defray the expenses of litigation, to protect the trust property, *a fortrori*, will a sale, ordered by the Chancellor himself, in a case which has been conducted under his own eye, pass the title to the purchaser.

[4.] We concur with Counsel for the defendants in error, that inasmuch as the defendants below relied on the title outstanding in Dinkins, it was competent to give in evidence the acts and declarations of Dinkins, showing title out of him; at least, up to the time of the judicial sale. And for myself, I am not prepared to say that these acts and admissions should be stopped at that time. That sale is based upon the hypothesis of title in the *cestui que trust*, and not in Dinkins; and these declarations are corroborative of the fact. The case stands precisely upon the same footing as though Dinkins, himself, were to sue for the slave.