PULLIAM *v.* THE STATE.

No. 14639.   NOVEMBER 9, 1943.

784

786

C. H. Dalton and W. B. Robinson, for plaintiff in error.

T. Grady Head, attorney-general, J. H. Paschall, solicitor-general, and L. C. Groves, assistant attorney-general, contra.

WYATT, Justice. ■ The evidence is entirely circumstantial, and must be measured by the rules of law with reference to circumstantial evidence. The Code, § 38-109, declares: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." In all homicide cases it must be shown that death was caused by some criminal agency on the part of some other human being. Langston v. State, 151 Ga. 388 (106 S. E. 903). It. appears that Mrs. Winnie Pulliam was found dead in the ruins of the burned building. She had been cut with a knife or other sharp instrument before the burning. Was she killed as the result of some criminal agency on the part of some other human being? The evidence with respect to the blood in the yard, on the doorsteps, and on the mattress underneath the body, considered in connection with the fact that across the abdomen was a cut sufficient to cause death, and the testimony of the doctor to the effect that the blood indicated that she was cut before being burned, was certainly sufficient to authorize the jury to reach the conclusion she was killed as the result of a criminal human agency. "A dead body found with a knife thrust across the throat and breast, sufficient to have caused death, and with no signs of accident or suicide about it, is sufficient to prove the corpus delicti of murder." Thomas v. State, 67 Ga. 460 (6). The evidence was sufficient to authorize a finding that a criminal human agency had intervened, and to comply with the circumstantial-evidence rule.

The next consideration is, who killed Mrs. Pulliam? The husband, Marcus T. Pulliam, had almost abandoned his wife and children for another woman. His conduct furnished a clear reason for his desire to be rid of his wife and children. He was cruel to his wife, and often threatened to kill her. He procured insurance on the lives of his children, amounting to $2400 a short time before their deaths, and at the same time failed to obtain insurance on

the life of his wife because of her bad health. The night before the burning early the next morning, and on Sunday, he went to the insurance office and paid the premiums on the insurance. The night of the crime he placed himself at the home late in the night, leaving the home at a time approximately when the fire started. The next day when arrested he showed glaring unconcern about the fate of his wife and children. Blood was found under his fingernails and on his knife. This evidence is of course circumstantial. Nevertheless, to what conclusion could the minds of the jury have reached, other than that Pulliam had killed his wife and children and burned the house in an effort to conceal his crime? Under the evidence the jury were authorized to find that no reasonable hypothesis existed save that of the guilt of the accused. "Whether dependent upon positive or circumstantial evidence, the true question in criminal cases, is not whether it be possible that the conclusion at which the evidence points may be false, but whether there is sufficient evidence to satisfy the mind and conscience beyond a reasonable doubt." Code, § 38-110. The evidence is all circumstantial; nevertheless, it consistently and constantly points to the defendant, and to none other than the defendant, as the guilty perpetrator of this crime. *Thomas* v. *State,* supra; *Wrisper* v. *State,* ·193 *Ga.* 157 (17 S. E. 2d, 714); *Giles* v. *State,* 6 *Ga.* 276; *Johnson* v. *State,* 73 *Ga.* 107.

■ The motion for new trial assigns error on the court's refusal, on objection by the solicitor-general, to permit Dr. D. L. Wood, a witness for the State while on cross-examination, to answer the question, "Do you pay your premium?" This witness had just testified that he held a policy with the "Whitfield Life Association." The plaintiff in error complains that this ruling deprived him of the right of a thorough and sifting cross-examination, and that he had the right to inquire as to the witness's interest or want of interest in said association, the State having contended that defendant carried in said association $2400 life insurance on certain members of his family whose lives were lost in the fire, and that such insurance was one of the motives of the alleged murder; and in these circumstances the plaintiff in error contends that it was shown that, in event of loss to the Association, each and all members or policyholders of the Association would have to bear the loss. Any answer to this question would have been irrelevant and not

related to any issue involved in the case. "It is true that 'the right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him' (Code, § 38-1705), and that a substantial denial of this right is good cause for the grant of a new trial. *White* v. *Dinkins,* 19 *Ga.* 285; *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92); *Daniel* v. *Ga. R. Bank,* 44 *Ga. App.* 787 (163 S. E. 311); *Barnwell* v. *Hannegan,* 105 *Ga.* 396 (31 S. E. 116). However, the scope of the cross-examination of a witness rests largely within the discretion of the judge. *Fouraker* v. *State,* 4 *Ga. App.* 692 (62 S. E. 116); *Hagood* v. *State,* 5 *Ga. App.* 80 (62 S. E. 641); *Rogers* v. *State,* 18 *Ga. App.* 332 (89 S. E. 460); *Fields* v. *State,* 46 *Ga. App.* 287 (167 S. E. 337). He may restrict the cross-examination to questions material to the issues. *Hawkins* v. *State,* 141 *Ga.* 212 (5) (80 S. E. 711); *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713); *Stevens* v. *State,* 49 *Ga. App.* 248 (174 S. E. 718)." *Clifton* v. *State,* 187 *Ga.* 502, 508 (2 S. E. 2d, 102). Under the foregoing authority the defendant's right to a thorough and sifting cross-examination was not materially abridged.

With reference to the further complaint respecting the witness's interest or lack of interest by reason of his being a policyholder in the Whitfield Life Association, it does not appear that any answer to the question, which would necessarily have been "yes" or "no," would have reflected any light upon the interest of the witness. He had already testified, without objection, that he was a policyholder in the association; and it may be presumed that he had paid whatever premium that was exacted of policyholders. Furthermore, the record is silent as to the policyholder's liability, if any, in case the association should be called upon to pay the proceeds of policies issued by it. The assignment is without merit.

■ Error is assigned (ground 3) on the court's refusal to permit Dr. D. L. Wood, a witness for the State, to answer the question on cross-examination: "What was the purpose of that?" (referring to the witness's study of medical jurisprudence), and the question, "Doctor, I will show you some cloth here; would you say that the cloth could fade and resemble blood color?" The last question was ruled out on objection that the witness had not qualified as a chemist. The contention is presented that in ruling out these questions the court denied to the defendant the right of a thorough cross-examination as well as the right to test the knowledge of

witness, to determine whether he was skilled or unskilled in his profession of a physician. No attempt was made to illustrate the purpose of the evidence sought in reference to the last question. It was the right of the court to limit the cross-examination to issues involved in the case; and what has been said in division 2 of this opinion is controlling on the question here raised.

In grounds 6, 7, 8, and 11 it is complained that the judge, upon objection, refused to allow answered certain questions propounded on cross-examination by counsel for the defendant to Clay Kennemer and Watt Kennemer, witnesses for the State. Upon examination of these questions it is found that they all relate to irrelevant matters, or the answers sought appear to be about matters irrelevant to any issue involved in the case on trial. The questions relate to how many persons viewed the body of deceased while at the undertaking establishment, what certain persons were doing there, what were the duties of certain employees of the Kennemers, the undertakers, where the offices of the Whitfield Life Association were located, whether the certificates issued by the association were called certificates or policies, and what percentage was paid to one of the witnesses who testified that he solicited and sold insurance for the association. The questions raised in these grounds are similar to those passed on in division 2 supra, and are controlled by the rulings there made.

In ground 4 complaint is made that the court propounded to J. W. Morrison, sheriff, a witness for the State, on cross-examination, the following question: "And three doctors made the examination?" (referring to examination of the body of the deceased wife). Counsel for defendant objected "to the court testifying in the case." Following this objection a colloquy ensued between the court and counsel, which ended when the court stated, "I have no objection to that, ask him any question you want to." It is contended that the question by the court deprived the defendant of the right of a thorough and sifting cross-examination; that undue emphasis was thereby placed upon the evidence of Dr. Wood; and that it was an intimation of the court as to the veracity of the matter testified about by Dr. Wood. The objection was not pertinent in any respect to the question propounded, and forms no basis for any of the assignments alleged as error.

In grounds 2, 9, and 10 errors are assigned upon the court's

action in propounding questions to certain witnesses for the State. One of the many assignments of error complains that the manner in which the judge conducted the examination of the witnesses was prejudicial and was such as to intimate and express an opinion upon the facts. It does not appear that counsel for the defendant made any objections to the questions at the time they were propounded to the witnesses by the judge, or that any motion was made for a mistrial, or to rulé out the evidence that had been elicited as a result of the examination conducted by the judge. The question of complaining of error for the first time in a motion for new trial because of the judge's violation of the provision of the Code, § 81-1104, inhibiting the judge from expressing or intimating his opinion as to what has or has not been proved, or as to the guilt of the accused, has been considered by this court in many cases, and the rulings have not been harmonious. *Potter* v. *State,* 117 *Ga.* 693 (supra), seems to be the leading decision holding to the view that a failure of the aggrieved party to move for a mistrial, or to register a proper objection, because of prejudicial remarks of the judge in this connection, will not preclude the party prejudiced thereby from complaining thereof after verdict, in the event the finding of the jury be adverse to him. The most recent decision dealing exhaustively with the question (which was certified by the Court of Appeals) is in *Allen* v. *State,* 194 *Ga.* 178, where this court had the *Potter* decision under review for the purpose of considering whether it should be overruled. The court, being equally divided, declined to overrule it. The court, again being confronted with the precise question in the instant case, issued a rule nisi (Code, § 6-1611), calling upon the attorneys for the parties to show by briefs why the *Potter* decision on the question of procedure, as involved in this case, and any other decisions containing similar rulings, should not be reviewed and overruled. Responses were duly filed pursuant to the rule. In the *Allen* case, supra, both views of the question were fully and forcefully presented. Mr. Presiding Justice Atkinson authored the opinion favoring reaffirmance of the *Potter* decision, and Mr. Justice Bell dissented. A collection of the cases on the subject was cited and fully commented upon. Further discussion here as to the correctness of the ruling in the *Potter* case could serve no useful purpose, and would be but to state again what was stated in the

*Allen* case. This court, upon consideration, now being convinced that the *Potter* decision, on the question of procedure as dealt with in the first division, supra, is erroneous, it is upon formal review hereby expressly overruled; and so as to any other case that conflicts with the ruling here made.

Under the foregoing ruling, the complaints raised in these grounds of the motion for new trial are defective and cannot be considered. See *Brown* v. *Caylor,* 144 *Ga.* 302 (3) (87 S. E. 295, Ann. Cas. 1916D, 745) ; *Moore* v. *McAfee,* 151 *Ga.* 270 (11) (106 S. E. 274) ; *Kay* v. *Benson,* 152 *Ga.* 185 (108 S. E. 779) ; *Adams* v. *State,* 171 *Ga.* 90 (8) (154 S. E. 700) ; *Herndon* v. *State,* 178 *Ga.* 832 (6) (174 S. E. 597) ; *Trussell* v. *State,* 181 *Ga.* 424, 426 (182 S. E. 514) ; *Armstrong* v. *State,* 181 *Ga.* 538 (2) (183 S. E. 67) ; *Morris* v. *State,* 185 *Ga.* 67 (194 S. E. 214) ; *Clifton* v. *State,* 187 *Ga.* 502 (4) (2 S. E. 2d, 102).

■ In ground 5 error is assigned upon the conduct of the court in propounding a question to Dr. E. H. Dickie, a witness for the State, while under examination by the solicitor-general. The witness, in reply to a question calling for an answer based upon his opinion, answered, "I imagine it did." Upon objection by counsel for the defendant as to the witness's imagination, the court interposed, "You mean by that, in your opinion, it did go deep enough?" to which the witness replied, "Yes sir." Counsel for defendant said: "We object to his opinion there." This objection was overruled. The assignment of error is directed at the conduct of the judge and the language used by him in questioning the witness, while the record discloses that counsel's objection was directed to the opinion of the witness, and not to the question asked by the court. What has just been said in division 6 is applicable alike to the question raised under this ground; and therefore it can not be considered.

■ In ground 12 complaint is made that the court committed error in ruling out certain evidence offered by the defendant. M. U. Pulliam, the father of defendant, testified to the effect that he (the witness) was in bed early on the morning of November 2, that the defendant had come to his home and had come in where the witness was in bed; and that the witness said, "Mark, I hear that you had a wreck, got in a little trouble." The solicitor-general objected to the conversation, on the ground that it was hear-

say, immaterial, and irrelevant. This objection was sustained. There was no error in this ruling. *Foss* v. *State,* 15 *Ga. App.* 478, 482 (83 S. E. 880); *Aycock* v. *State,* 188 *Ga.* 550, 566 (4 S. E. 2d, 221).

■ Ground 13 complains that the court committed error in charging the jury as follows: "The defendant enters upon the trial of the case with the presumption of innocence in his favor, and this presumption remains with him until and unless the State shall overcome and remove it by the introduction of testimony in your presence and hearing, sufficient to convince your minds of his guilt beyond a reasonable doubt." The principal complaint made against this instruction was on the failure of the court to charge that the evidence should be "sufficient to convince your minds and conscience of his guilt beyond a reasonable doubt," instead of the charge as given, which limited the sufficiency of evidence to a conviction of the minds rather than a conviction of the "mind and conscience," as provided in Code, § 38-110. It is contended that the mind and conscience are separate and distinct human faculties, and that a conviction of the one and not the other would not be a compliance with the law as set out in the Code above referred to. Immediately following the portion of the charge complained of, the court fully and properly defined reasonable doubt; and under the charge given as a whole, the jury could not have been confused or misled as to the degree of proof necessary to overcome the presumption of innocence. See *Hayes* v. *State,* 18 *Ga. App.* 68 (88 S. E. 752); *Mapp* v. *State,* 26 *Ga. App.* 479 (106 S. E. 801).

■ Ground 14 complains of the following charge to the jury: "Gentlemen, there is also charged in the indictment, the charge of killing by burning the house, as well as by cutting, I charge you, gentlemen, that all burnings are presumed to be accidental; and if you should determine that this death was produced by burning and by reason of accidental burning of the house, unmixed with any human agency of which the defendant had any connection therewith, you will acquit upon that ground." The alleged vice in this charge is the failure of the judge, in charging that all burnings are presumed to be accidental, to also include the language "or from providential cause." The rule of law as given in charge was first recognized by this court in *Phillips* v. *State,* 29 *Ga.* 105 (4), where it was said: "When a house is consumed by fire, and

nothing appears but that fact, the law rather implies that the fire was the result of accident, or some providential cause, than of a criminal design." It has been followed in many cases. See *Williams* v. *State,* 125 *Ga.* 741 (54 S. E. 661) ; *Langston* v. *State,* 151 *Ga.* 388 (supra) ; *Wade* v. *State,* 195 *Ga.* 870, 875 (25 S. E. 2d, 712) ; *West* v. *State, 6 Ga. App.* 105 (64 S. E. 130). Many others may be cited. But it has also been held that failure of the judge, in the absence of a written request, to charge the jury that "the law presumes every fire to be accidental, until the contrary appears, when a man is charged with the offense of arson" is not reversible error. *Randall* v. *State, 3 Ga. App.* 653 (60 S. E. 328) ; *Robinson* v. *State,* 18 *Ga. App.* 394 (89 S. E. 434) ; *Sutton* v. *State,* 17 *Ga. App.* 713 (88 S. E. 122, 587). It does not appear that the failure of the court to include in the charge the words "or from providential cause" deprived the defendant of any principle of law embodied in the recognized rule above referred to, or lessened the burden of the State in proving the charge in the indictment that the deceased met her death by the burning of the house by defendant. The jury were instructed to acquit the defendant of the charge that the deceased met her death by reason of the burning of the house, if they should determine that her death was produced by an accidental burning with which the defendant had no connection. This was a fair statement of the law, and the assignment under this ground cannot be sustained.

■ In ground 15 error is assigned upon the following charge: "Gentlemen, the object of all legal investigation is the discovery of the truth. Direct evidence is that which points immediately to the question at issue. Indirect or circumstantial evidence is that which tends to establish the issue by proof of various facts and circumstances sustaining by their consistency the hypothesis claimed. Before you would be authorized to convict on circumstantial evidence alone (and this case is a case dependent entirely on circumstantial evidence), the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save the guilt of the accused." The complaint urged against this charge is that the judge in defining circumstantial evidence added the words "and circumstances" following the language "by proof of various facts;" that the inclusion of these words by the court was injurious, harmful, and highly prejudicial;

that the charge was an improper definition of circumstantial evidence; and since defendant's conviction was dependent entirely upon circumstantial evidence, the jury was allowed to consider as circumstantial evidence that which had been established by proof of circumstances, instead of circumstantial evidence established by proof of facts, as required by law as set out in the Code, § 38-102. It will be observed that, following the use of the words "and circumstances," the judge instructed the jury that "the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." The charge as given substantially defined circumstantial evidence as set out in the Code, § 38-102. "Circumstances are but minor facts, although the words, facts and circumstances, are used interchangeably in the phrase 'circumstantial evidence.' When we speak of a circumstance, we have in mind a minor fact that relates to or is connected with the main fact. When these minor facts point unerringly to a conclusion, then they are said to be certain." Wharton's Criminal Evidence (10th ed.), 1635, § 874. The foregoing was quoted approvingly in *Scott* v. *State*, 57 *Ga. App.* 489, 490 (195 S. E. 923). There is no error in this assignment.

■ In ground 16 complaint is made that part of a burned mattress was allowed to go to the jury-room, that had not been introduced in evidence during the trial. The judge appended to this ground for new trial a note as follows: "During the argument of Mr. Dalton, counsel for movant, the following occurred in reference to the mattress of which complaint is made in this ground of amended motion: Mr. Paschall: Counsel is arguing that he would like for me to explain that part of the mattress that was brought in and is down at that jail. I want to say I will be glad for the sheriff at this time to bring it up, and I will offer it if he doesn't object. Mr. Dalton: No objection; bring it here so this jury can see it. The court: Whatever mattress is down there bring it up and let it go in." It appears that the mattress was sent to the jury-room along with the jury, and after it had remained with the jury for a period of twenty or twenty-five minutes, counsel for the defendant reported the matter to the judge. Thereafter evidence was introduced in reference to where the mattress had been kept since the fire, and upon objection by counsel, the court or-

dered the mattress withdrawn from the jury-room. It is contended that the action of the court in permitting the mattress to go out with the jury was highly prejudicial and harmful to the defendant, as it had not been offered, tendered, or introduced in evidence. In view of the note by the judge, appended to this ground, no merit is found in this assignment of error. The mattress had not been introduced in evidence. It apparently was not in the court-room during the argument of counsel for the defendant to the jury, during which argument he suggested that the mattress be brought before the jury. The solicitor-general obligingly stated that he would have the sheriff produce the mattress, and that he would offer it in evidence if counsel for defendant had no objection. Counsel for the defendant thereupon not only did not object, but stated there was no objection, and requested that it be brought before the jury so they could see it. The court requested that the mattress be brought in, and stated: "Let it go in." If any harm resulted from the exhibition of the mattress to the jury and in permitting it to go to the jury-room, the defendant is in no position to make complaint, since it was done at his request.

No ground of the motion shows any error requiring the grant of a new trial. *Judgment affirmed. All the Justices concur.*

JENKINS, Presiding Justice, concurring specially. While upon the adjudication of the *Allen* case, referred to in division 6 of the opinion, I joined in the view that the *Potter* case should not be overruled, inasmuch as all of my colleagues as the court is now constituted think that it should be overruled, and since the question involves only one of practice, I deem it proper to join with them in overruling that decision, especially as the rulings of this court have not been harmonious on the question there involved. I do this notwithstanding the fact that I still think there are some potent reasons which tend to sustain the correctness of that decision. In thus yielding to the opinion of my colleagues I do not feel that I am sacrificing any conviction of principle on a question thus enveloped in doubt, but should, if possible, accommodate my views to those of the other Justices in order that the rule may be made definite and certain.