33085. RUSSELL *et al. v.* BASS.

Decided November 21, 1950.

**660**

*Harris, Harris, Russell & Weaver,* for plaintiffs in error.
*Carlton Mobley, E. W. Maynard,* contra.

MacIntyre, P. J. 1. In special ground 2 of the defendants' motion for a new trial, it is contended that the verdict of $2250 and the judgment predicated thereon are excessive under the facts adduced at the trial and for that reason should be set aside. We think that the verdict was well within the range of the evidence. The plaintiff's prayer was for $5000 to cover damage to his automobile, time lost from work, medical and doctor bills, and pain and suffering. "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." Code, § 105-2015. Under the evidence the jury would have been authorized to find any amount up to $5000, and we do not think that the verdict of $2250 raises an inference of either prejudice or bias.

2. In special ground 3, it is contended that certain "inadmissible and prejudicial evidence was illegally admitted by the court to the jury over the objection of the defendants. The testimony was on cross-examination of Mr. Frank N. Broome, a witness for the defendants, by attorney for the plaintiff, where the following colloquy took place: Q. Judge Maynard: 'Mr. Witness, you have testified that the car struck the truck, have you not?' A. 'No sir, I have not.' Q. 'You did not testify that the car struck the truck and that the truck was standing still when they collided?' A. 'No, what I testified to was, when I heard the impact, I looked up and the car was moving and the truck was standing still.' Q. 'Well, if the truck was standing

still and the car was moving, then the car would have had to strike the truck, would it not?' General Russell: 'We object to that as a conclusion.' The Court: 'I overrule the objection.' Judge Maynard. 'Will you call that question back, Mr. Joiner (Reporter)?' Q. (Repeated by Reporter): 'Well, if the truck was standing still and the car was moving, then the car would have had to strike the truck, would it not?' A. 'How was that now?' Q. (Question again read by Reporter). A. 'That's right.' Further, in the cross-examination of Mr. Broome by attorneys for the plaintiff, there appears the following colloquy: Q. Judge Maynard: 'Can you tell the jury or is it true that the car could have made those imprints on it and made that broken bumper by itself?' A. 'Yes sir, it could.' General Russell. 'We object to this question. We want to keep this record straight. Now, the judge has asked him, could he hit the fender and the side and the bumper, if he had been moving, I believe is the question. Would you read that question?' (Question next above read by Reporter). General Russell. 'I object to that as being illogical. I don't think any witness could answer that, about making it by itself. I do not know what the question means and I don't believe that the witness is in position to answer it; and in the second place, if he could answer it, it would be eliciting a conclusion.' The Court: 'I overrule the objection.' Q. Judge Maynard: 'Will you answer, please sir?' A. 'What was that now?' Q. (Repeated by Reporter): 'Can you tell the jury or is it true that the car could have made those imprints on it and made that broken bumper by itself?' A. 'You mean by the car itself, without the truck?' Q. 'Yes, by itself?' A. 'It wouldn't without the truck being sitting there, no sir. After it hit the truck— as a rule, when a car hits a truck or anything that is standing still, it usually knocks it, in other words, in the opposite direction, in other words; and, of course, the back end can sway in or the side of the car can sway in. It is according to the way the impact hits.' Further, in the cross-examination of Mr. Broome by attorneys for the plaintiff, there appears the following colloquy: Q. Judge Maynard: 'So then, if that is true, then the damage on the right-hand side of this car would have to be made by the truck?' General Russell. 'We want to keep the record straight. We think that is a conclusion. We object to

it and ask that it be excluded.' The Court: 'Overrule the objection.' Q. Judge Maynard: 'Will you please answer that?' A. 'He objected to that question.' Q. 'I know he did but the court overruled it.' A. 'What was the question, please sir?' Q. (Repeated by Reporter): 'So then, if that is true, then the damage on the right-hand side of this car would have to be made by that truck?' . . Judge Maynard: 'What do you say about that?' A. 'Well, it would have to be made, in other words, striking the truck and the bumper passing, what you call kind-of a sideswipe, it had to hit the truck. In other words, if it didn't, you wouldn't have had any damage to it.' Q. 'Do you think the bumper of the truck did all of that damage to the side of the car?' A. 'In other words, it had to do it, it didn't hit the motor; it didn't hit the engine.' Q. 'Then, in your opinion, all the damage on the right-hand side there was done by the car itself?' A. 'It was done by the impact on that truck, by the lick when it occurred, when it hit. That is what bent the car up.' Q. 'But, didn't you testify in your former testimony—the question in · your former testimony: 'Do you remember whether it pushed the bumper in?' Answer: 'No sir, I sure didn't, the best I remember, it was hard to tell where the car hit the bumper. I might be mistaken on that but I think that is right. Question: 'How was Mr. Bass' car damaged?' . . 'That is all.'" ·

" 'The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him.' Code, § 38-1705. 'A substantial denial of this right is good cause for the grant of a new trial. . . However, the scope of the cross-examination of a witness rests largely within the discretion of the judge.' *Pullman* v. *State*, 196 *Ga.* 782, 788 (28 S. E. 2d, 139). It is the duty of the court 'to allow a searching and skillful test of his [the witness's] intelligence, memory, accuracy, and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted. This is a matter that necessarily belongs to and abides in the discretion of the court. . . There must be allowed some degree of skill, if not sharpness, in conducting cross-examinations, because a witness, however fair and honest and truthful, may not be careful enough, and it is to the interest of justice to expose the blundering of a witness, as well as his wilful departures from

veracity. A jury ought to be made to know what character of mind they have before them on the witness stand, whether they have a careful, cautious witness, or one who is disposed to take things on trust. That is quite essential. But the court is there, watching the proceedings, and acquainted with all the surroundings; it is proper to leave such a question to the discretion of the court.' *Harris* v. *Central Railroad,* 78 *Ga.* 525, 534 (3 S. E. 355)." *Loomis* v. *State,* 78 *Ga. App.* 153, 157 (51 S. E. 2d, 13). There is no merit in this ground of the motion for new trial.

3. Special ground 4 contends that the trial court erred in charging the jury as follows: "Now, gentlemen, by agreement, the parties have stipulated that at the time of the collision the City of Milledgeville, Georgia, had a valid and existing ordinance providing that a motor vehicle should not pass over into intersecting streets against an overhead red light. I charge you that a violation of this ordinance would constitute negligence per se, that is, negligence as a matter of law." It is contended that this charge is erroneous and prejudicial to them and that it was wholly unauthorized, there being no such stipulation. According to this ground of the amended motion for a new trial, a colloquy took place between counsel for both sides and the court, as follows:

Mr. Mobley (attorney for plaintiff). "Your Honor, we allege, with reference to this Hartford Accident & Indemnity Company, that this Russell Transfer Company truck was covered by a policy of insurance with the Hartford; and we notified them to produce it and they did; and we have entered into a stipulation with counsel on the other side to the effect that at the time of the accident the Russell Transfer Company was covered by a policy of indemnity insurance in an amount not less than the amount claimed as damages in this action, issued by the Hartford Accident and Indemnity Company in compliance with the law. We have also stipulated—we allege in the petition in paragraph 6-b that the traffic at this intersection was controlled by a traffic light, a red and green light, and that it is a violation of the city ordinance to drive through a red light—and it is my understanding that we have stipulated with counsel on the other side that the traffic is so controlled by ordinance on the traffic light or signal light at that intersection, in compliance with the

ordin'ance; and it is a violation of the ordinance to drive through a red light on those streets. Is that right, General?" General Russell. "We stipulate that. We have the ordinance here all right with us. We do not know what it was, but the evidence shows that this traffic was controlled by a traffic light; and, of course, that is all it comes down to. We were traveling through on a green light or we were not. That is all right; if counsel wants to set up per se negligence, we want to set it up too, but I do not understand that it is in the case." Mr. Mobley. "That is my understanding, that we would both claim the other ran through a red light. He is claiming we ran a red light, and we claim they did, and it is a violation of the city ordinance to run a red light, whichever one did." The Court. "Do you stipulate that by ordinance of the City of Milledgeville, it is a violation to drive through a red light?" Mr. Mobley. "I don't know." General Russell. "I don't know. I am just not a Milledgeville lawyer, but we are trying to try the lawsuit on the red and green light." Mr. Mobley. "If it was not controlled by an ordinance, it wouldn't be material."

Based on this colloquy the trial court took the position that there was a stipulation as to the ordinance of the City of Milledgeville. He appended to this special assignment of error a note in which he recites the colloquy and places his construction on its meaning. He concludes this note as follows: "It is clear to this court that such a stipulation was made." Counsel for the defendant in error contends that this amounts to a qualification of the court's approval of this assignment of error, and that therefore the same must be considered that a stipulation was made, and that accordingly the charge with reference thereto was authorized. Counsel for the plaintiff in error contends that the last sentence of the court constitutes only the conclusion reached by him based on the colloquy, and that it therefore does not conflict with the material portion of the assignment of error. See *Bird* v. *State*, 36 *Ga. App.* 665 (137 S. E. 913); *Fletcher* v. *Collins*, 111 *Ga.* 253 (36 S. E. 646).

It is manifest to us that the court reached the conclusion "that such a stipulation was made" from the colloquy and other facts set up in his note. We therefore think it proper for us to determine from the same sources of information whether or not

the stipulation was made, rather than to treat the last sentence of the note of the court as conclusive that it was made. However, in doing so we take into consideration not only the colloquy between counsel and the court on the subject, but facts set up in the court's note which do not otherwise appear in the record. Other parts of the court's note are as follows: "The witnesses were examined thoroughly on this point. The sole issue in the case was: 'Who had the green light?' Counsel in their argument of the case dealt principally with this same issue. Neither in the opening statement nor in the argument of counsel was any question of right of way raised, except as the same was governed by the traffic light. The court stated to the jury in its charge that by agreement of counsel it had been stipulated that there was such an ordinance, and although defendant was represented by two able counsel, no objection was made to the statement, but both acquiesced by their silence."

Counsel for both sides in this case are men of outstanding ability and integrity. One insists that the stipulation was made. The other denies it. It is not contended by either that the stipulation, if any exists, was in writing. This is no reflection upon counsel for either side, for the human mind is not a recording machine or mathematical calculator which can be depended upon to reach identical results in all identical situations, and disputes as to the context, meaning, and effect of the spoken word are among the commonest with which the courts must deal. While it is true that a good deal of the colloquy indicates that a clear and complete understanding with regard thereto had not been reached, yet there was enough in the colloquy together with the subsequent conduct of counsel for both sides in reference thereto to authorize the trial court to find that the stipulation was in fact made. At the time the court charged the jury on this subject, it appears that both were relying on the negligence of the other in running the red light. Until the jury made its verdict, therefore, it could not be determined who was harmed by the charge and who benefited from it. Had the verdict been for the defendant, the stipulation and the charge of negligence per se supported by it would have been harmful to the plaintiff. As it turned out, it was harmful to the defendant. However, according to the note of the court, which we must take as true in this

respect, counsel for the defendant was present in court. He made no complaint as to this charge. Upon its completion he did not file a request with the court to change it. It follows, therefore, that the trial court was authorized to find that the stipulation in question was made. This authorized the instruction on negligence per se. This special assignment of error is without merit.

4. We think that no useful purpose would be served by setting out in detail the rather involved and voluminous evidence in this case, which consists of some 72 pages of the record. Suffice it to say that we have gone several times carefully through the evidence, and find that the evidence for the plaintiff and that for the defendant are in sharp conflict on the questions of who had run through the red traffic signal light, and who had caused the collision; but the jury has resolved this conflict in favor of the plaintiff and found the defendants guilty of negligence and such negligence to be the proximate cause of the plaintiff's damages; and this court will not under the facts of this case disturb that finding, there being sufficient evidence to authorize it.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*