Scott WRAY, Petitioner,

v.

Joseph HOPPER, Warden, Georgia State Prison, Respondent.

Civ. A. No. 2901.

United States District Court,
M. D. Georgia,
Macon Division.

May 1, 1974.

James B. McLaughlin, Jr., Hall & Bloch, Macon, Ga., for petitioner.

David J. Bailey, Asst. Atty. Gen., of Ga., Atlanta, Ga., for respondent.

OWENS, District Judge:

The petitioner by this petition for writ of habeas corpus attacks the life

sentence he is presently serving in the Georgia State Prison at Reidsville, Georgia. He received this life sentence on January 21, 1948, in the Baldwin County Superior Court following a plea of guilty to an indictment for murder.

Mrs. Emma Lou Wray, the wife of the petitioner, died on Sunday, January 18, 1948. A coroner's jury meeting on January 19, 1948, made a finding that she died of stab wounds inflicted by her husband. A warrant was issued on January 20, for the arrest of Scott Wray on a charge of murder. That same day the Baldwin County grand jury returned an indictment for murder against Scott Wray. On January 21, 1948, Wray entered a plea of guilty to the murder indictment through his appointed counsel Mr. James Watts of Milledgeville. Wray was sentenced to life imprisonment and subsequently assigned to a chain gang. Three months later he escaped. He remained free until 1972 when it was discovered by chance that he was a fugitive from the State of Georgia. He was returned to Georgia and imprisoned. Shortly thereafter he began his efforts for post-conviction relief.

Wray's petition for writ of habeas corpus filed in the Superior Court of Tattnall County was denied after an evidentiary hearing. On appeal, the Supreme Court of Georgia affirmed. Wray v. Caldwell, 230 Ga. 850, 199 S.E.2d 315 (1973). Wray has thus exhausted his available state remedies.

His petition filed in this court asserts three grounds for relief:

(1) He was indicted by a grand jury from which blacks were systematically excluded.

(2) He did not knowingly and voluntarily enter a plea of guilty.

(3) He was denied effective assistance of counsel.

This court by its order of September 7, 1973, allowed the petition filed in forma pauperis and directed the respondent to file a verified answer to the allegations of the petition within thirty days. Counsel for respondent did not file a verified answer as directed but instead filed a motion for summary judgment. The motion for summary judgment was denied and the matter was set down for an evidentiary hearing. Counsel for respondent has not yet filed an answer to the petition.

The facts as found by the Tattnall Superior Court are presumed to be correct if the evidentiary hearing and the findings of that court meet the requirement of 28 U.S.C. § 2254(d). A review of the record of the hearing held by that superior court reveals that the petitioner testified on his own behalf and that the deposition upon written interrogatories of Mr. James Watts was read into the record. The petitioner was unrepresented by counsel. He propounded no written interrogatories upon Mr. Watts.

The petitioner testified, *inter alia*, that his wife had accidentally fallen on the knife, that he was arrested and beaten, that he first saw Mr. Watts on the day he was sentenced, that Mr. Watts talked with petitioner very briefly before entering a plea of guilty on behalf of petitioner and that neither Mr. Watts nor the judge ever asked petitioner if he were guilty or if he wished to enter a plea of guilty.

Mr. Watts stated in his deposition that he remembered representing Mr. Wray, that Wray was arrested sometime before the trial, that he talked with Wray on two or three occasions before they went to court, that the first time he talked with Wray, Wray said that his wife was killed accidently, that he (Mr. Watts) talked with the investigating officers and all the witnesses, that he then talked to Wray again and expressed his opinion that Wray would probably be convicted if tried by a jury and might receive a death sentence. Watts further testified that he told Wray of the right to trial by jury, that the possibility of a death penalty could be avoided by pleading guilty, that Wray considered his advice for a day or two before deciding to plead guilty.

The Superior Court of Tattnall County found as a matter of fact that Mr. Watts' testimony was to be credited and petitioner's discredited, that Mr. Watts conferred with Wray at least twice prior to the day on which Wray pled guilty, that Watts thoroughly investigated the case, that Wray was informed of his rights and that Wray "freely, knowingly and voluntarily decided to plead guilty and authorized Mr. Watts to enter a guilty plea on his behalf."

The court notes in evaluating the state court's findings that Mr. Wray was unrepresented by counsel at the hearing, that Mr. Watts did not testify in person before the finder of fact and that undisputed facts revealed by the records of the Baldwin County Superior Court make it highly improbable that Mr. Watts could have conducted the investigation he described in the time between indictment and the plea of guilty. It is also noted that Mr. Wray testified before this court that he is illiterate. It thus appears that the material facts were not adequately developed at the state hearing and that the conclusions reached, particularly as to credibility, are not adequately supported by the record. See Walker v. Smith, 439 F.2d 392, 395 (5th Cir. 1971).

This case came on for a hearing before this court on February 12, 1974. Mr. Wray was represented by court-appointed counsel. The court heard testimony from Mr. Wray, Mr. Watts and Mr. J. C. Cooper, Clerk of the Baldwin Superior Court. All the available court records were introduced into evidence.

Mr. Wray's testimony at this hearing was essentially the same as at the prior hearing. He continued to assert that he never saw Mr. Watts before being taken to court and that he never consented to a guilty plea being entered on his behalf.

Mr. Watts testified that he believed that he was appointed after the indictment was returned and that he believed that he spoke with Wray two or three times before the day the plea was entered. His best recollection was that the evidence against Wray consisted of the coroner and police officers who would testify that Mrs. Wray died of multiple stab wounds and witnesses who had seen Wray and his wife quarrel that day. He recalled that there were no actual witnesses to the crime. He did not recall Wray ever stating to him that he was guilty. Mr. Watts did not consider the possibility of attacking the racial composition of the grand jury. He discussed a plea bargain with Mr. Baldwin, the Solicitor General, who would only consent to a guilty plea to murder. Mr. Watts recalls that Wray consented to the entry of a guilty plea. He further testified that under the practice followed by the Baldwin Superior Court in 1948 attorneys were not appointed to represent indigents until after indictments had been returned. Understandably, Mr. Watts expressed doubts as to the certainty of his memory as to specific details of the case.

Counsel for the respondent agreed to stipulate that blacks were systematically excluded from Baldwin County juries in 1948.

The evidence leads the court to the following findings of fact:

Mr. Scott Wray was indicted for murder on January 20, 1948, in Baldwin County, Georgia. Mr. James Watts was appointed to represent Mr. Wray on either January 20 or 21, 1948. Considering the procedure normally followed in the Baldwin Superior Court at that time, counsel was probably appointed on January 21.

Mr. Watts entered a plea of guilty on behalf of Mr. Wray on January 21. This plea was a result of a plea bargain with the Solicitor General. Under the bargain Mr. Wray was allowed to plead guilty to murder, receive a life sentence and thus avoid any chance of being sentenced to death.

Mr. Wray asserted to his counsel that he was innocent. He never admitted guilt even after the decision was made to enter a guilty plea.

It is not clear exactly what efforts were made by Mr. Watts to investigate

the facts and research the law applicable to the case. It is clear that the case proceeded from appointment of counsel to entry of guilty plea quite quickly, at most in one day's time. Mr. Wray was advised by counsel that his only reasonable course of action was to plead guilty to murder. This recommendation was made without a full investigation of the case.

A plea of guilty waives all non-jurisdictional defenses, both known and unknown, if the plea is voluntarily and understandingly made. Lamb v. Beto, 423 F.2d 85 (5th Cir. 1970). It is a lawyer's duty to ascertain that his client who chooses to plead guilty does so knowingly and voluntarily. Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974).

The burden on an attorney in meeting this duty to his client varies from case to case just as the motivations which induce pleas of guilty vary from person to person. As the Supreme Court stated in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970):

> " . . . For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family." Id. at 750, 90 S.Ct. at 1470, 25 L.Ed.2d at 757.

Thus an attorney may more quickly and with less effort fulfill his duty to a client who wishes to plead guilty than to a client who agrees to plead guilty only because that course appears to be the best choice under the circumstances. Compare Lamb v. Beto, supra, with Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971). There are of course times when it is quite proper for an attorney to advise a client to plead guilty even though the client does not admit guilt. North Carolina v. Alford, 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970). See Colson, supra, at 1081, n. 5. The competency of such advice presupposes that the attorney has reached this conclusion only after a full investigation of the facts, Windom v. Cook, 423 F.2d 721 (5th Cir. 1970); Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1968); and research of the applicable law. Estelle, supra; Walker v. Caldwell, 476 F.2d 213 (5th Cir. 1973); Colson, supra.

The case against Mr. Wray was apparently based upon circumstantial evidence. This of itself created a substantial factual and legal question of whether under Georgia law the evidence against the defendant would have been sufficient to support a conviction for murder. Compare Gresham v. State, 150 Ga. 668, 104 S.E. 629 (1920), with Pulliam v. State, 196 Ga. 782, 28 S.E.2d 139 (1943). The circumstantial nature of the case is even more significant in light of the fact that under Georgia law as it then stood a defendant could make his statement to the jury but was not subject to the rigors of cross examination. Georgia Code of 1933 §§ 38–415, 38–416, amended Ga.Laws, 1962, p. 133, Ga.Laws, 1973, p. 292. See Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1960).

This court cannot say from the record before it and from this remote point in time whether the total evidence against Wray would have been sufficient for conviction. This, though, is not the question before the court. The question at issue is whether Wray was made sufficiently aware of the case against him, the alternatives before him and the relative merits of the alternatives so that he was prepared to make an informed decision as to how he should plead.

The evidence before the court shows that Wray asserted his innocence but was advised that a plea of guilty to murder was his one good hope to avoid a strong possibility of receiving the death penalty. Wray was advised by counsel to plead guilty even though Wray's

counsel had not adequately explored the strength of the case against Wray and of possible defenses in Wray's favor. Thus the plea of guilty entered on behalf of Wray was not the product of a voluntary and informed decision by Wray. The plea of guilty must be set aside.

It is therefore ordered that the petitioner's conviction be set aside as null and void and the petitioner be remanded to the Superior Court of Baldwin County for re-arraignment. Petitioner Wray shall be re-arraigned and, if necessary, tried within 120 days of the date of this order, failing which the petitioner shall be released from custody and a writ of habeas corpus issued absolute.[1]

So ordered.

---

[1]. The issue of the validity of the indictment was not raised in the state court proceedings, and this court therefore declines to decide the issue. Counsel for the respondent stipulated that blacks were excluded from Baldwin County juries in 1948. It would therefore seem appropriate that the petitioner be reindicted.